Rick A. WILSON, Jerrel A. Schultz and Walter Lewis Sayers, Jr., Appellees,

James R. Bump; Charles W. Perry, III; Vera A. Davis; Don Briley; Lewis W. Biggs; Velma D. Lake; Robert E. Lee Brown; John C. Poe; John Norris; Charles L. Carty; and James Williams, Appellees,

Jim J. Martin, Herman Uekman, Melvin G. Jones and Joe E. Johnson, Appellees,

v.

Tommy ROBINSON, Individually and in his Official Position as Sheriff-Elect of Pulaski County, Arkansas, Appellant.

No. 81–1102.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 18, 1981.

Decided Dec. 30, 1981.

David M. Fuqua, argued, Wallace, Hilburn, Clayton & Calhoon, Ltd., North Little Rock, Ark., for appellant.

Gilker & Swan, Fort Smith, Ark., for Arkansas Sheriff's Ass'n.

Dan J. Kroha and Robert A. Newcomb, argued, Little Rock, Ark., for appellees.

Before LAY, Chief Judge, and HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

The Sheriff of Pulaski County, Arkansas, appeals from an injunction which prohibits him from discharging certain deputies unless such actions comply with administrative procedures required under a county ordinance. We affirm the district court, 506 F.Supp. 1236, as modified herein.

I.

Tommy Robinson was elected Sheriff of Pulaski County and assumed office on January 1, 1981. Three weeks before that event, Sheriff-elect Robinson notified over two dozen deputy sheriffs by letter that they would not be reappointed, effectively terminating their employment on January

1, 1981. In three actions which were consolidated below, the employees sought injunctive relief, contending that the manner of their termination violated procedural due process guarantees of the Fourteenth Amendment. Some of the employees also asserted First Amendment claims under section 1983: one group alleged their discharge was in retaliation for political activity on behalf of the sheriff-elect's opponent; another group alleged their termination was in retaliation for promoting a union among deputy sheriffs.

The district court ruled that under state law, the employees have a legitimate expectation of continued employment and that the terminations did not comply with the notice and grievance procedures required under a local ordinance. The sheriff was enjoined from discharging the employees unless he did so in compliance with the ordinance. The district court retained jurisdiction over the employees' First Amendment claims, but deferred action thereon— ruling that the employees must exhaust administrative remedies before seeking section 1983 relief.

## II.

■ Whether the employees have a property interest cognizable under the Fourteenth Amendment is a question decided by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Here, Pulaski County Ordinance No. 255 provides a comprehensive scheme of employment policies for county employees. Under the ordinance, numerous rights accrue to employees following a probationary period, including designation of permanent status and vesting of rights to retirement benefits, vacation and

sick leave, and life and health insurance. *See* Pulaski, Ark., Ord. No. 255, §§ 7.1, 19.1, 19.2, 19.10 & 19.12 (1978). It is not necessary to decide whether these rights alone create an interest sufficient to require due process protection. The ordinance expressly provides such protection: an employee must be given two weeks notice prior to involuntary termination; the reasons for such action must be filed in writing; and the employee has a right to appeal such action to a grievance board which in turn makes a recommendation in the matter. *Id.* at §§ 17(d) & 18.

There can be no doubt that this ordinance creates an expectation of continued employment sufficient to require that procedural due process be afforded to county employees prior to termination. *See Glenn v. Newman*, 614 F.2d 467, 471–472 (5th Cir. 1980). The employees, having served well beyond their probationary period,[1] come within the scope of the ordinance. They are entitled under the Fourteenth Amendment to the minimal procedural protections afforded by the ordinance.[2]

The defendant does not seriously dispute that, if the ordinance is valid, it creates rights cognizable under the Fourteenth Amendment.[3] He also concedes that the terminations were not conducted in compliance with the ordinance's procedures. The defendant contends, however, that the ordinance on its face and as applied violates the separation of powers doctrine under Arkansas law by encroaching upon the executive branch of county government.

■ We decline to declare the ordinance, or the state statute pursuant to which it was enacted, violative of the state constitution. The ordinance is clearly authorized by

---

1. A number of the employees have served over ten years with the sheriff's department.

2. Whether the ordinance also creates substantive rights is less clear. The grounds for termination of permanent employees appear limited to "good cause" grounds under section 17 of the ordinance, but the power of the grievance board appears limited to making recommendations. We need not reach this question, however, because the ordinance clearly creates procedural rights and the injunction below is limited to protecting those rights.

3. Defendant argues at some length that, absent the ordinance, the employees do not have a property interest in their employment sufficient to require due process protection. We need not reach this question in light of our determination that the ordinance does apply to these plaintiffs.

state statute. The Arkansas legislature has empowered Quorum Courts (the legislative branch of county government) to regulate "employee policy and practices of a general nature, including but not limited to, * * * general policies to be applicable in the hiring of county employees." Ark.Stat.Ann. § 17–3805(b) (1980). Such ordinances are to be "uniform in application to all employees of the county," excepting only elected officials. *Id.* If there could be doubt whether this grant of authority reaches to termination procedures, state law further provides that Quorum Courts have legislative authority over "the affairs of the county" except where *expressly prohibited* by the Constitution or by law." (Emphasis added.) *Id.*, at § 17–3801. The defendant has not cited, nor have we discovered, any state constitutional or statutory provision which expressly prohibits local authority over termination procedures.

Although the Arkansas Supreme Court has not passed upon the precise question here, it has upheld local employment ordinances on both occasions that such issues have been decided. *See Henderson v. Russell*, 267 Ark. 140, 589 S.W.2d 565 (1979) (anti-nepotism ordinance held constitutional); *Walker v. County of Washington*, 263 Ark. 317, 564 S.W.2d 513 (1978) (ordinance fixing office hours for elected official's duties held constitutional).

■■ The ordinance and the legislation authorizing it are presumed valid and the burden is upon the party asserting unconstitutionality to establish the invalidity. Where, as here, no state decisional or positive law exists which contradicts the presumption of validity, we uphold that presumption and decline to intrude upon the power of state courts to determine such questions of state constitutional law.

The district court's injunction only requires that the defendant sheriff comply with the ordinance's notice and grievance procedure in order to terminate the employees. Whether termination could properly be enjoined on other grounds has not been reached. In affording relief, the district court properly applied the standards announced by this Court in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981). We affirm.

### III.

Two groups of plaintiff employees also allege that their terminations were motivated by retaliation for protected exercises of First Amendment rights. Although these claims are often difficult to establish, the district court found that the employees had "demonstrated a substantial likelihood" of success on the merits and "create[d] a fair ground for litigation." The court stayed action on these claims, however, ruling that employees must exhaust administrative remedies in job dismissal cases before seeking federal relief.[4]

We note that plaintiffs' First Amendment claims involve fundamental constitutional rights and implicate important federal concerns. *See, e.g., Mount Healthy City School District Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Moreover, the claims arise in a section 1983 action for damages and other appropriate relief.

■ This Circuit has held that exhaustion of state administrative remedies is not a prerequisite to bringing a section 1983 action. *Simpson v. Weeks*, 570 F.2d 240 (8th Cir.), *cert. denied*, 443 U.S. 911, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979); *Green v. Ten*

4. In so ruling, the district court relied upon *Gooley v. Conway*, 590 F.2d 744 (8th Cir. 1979); *Norton v. Blaylock*, 409 F.2d 772 (8th Cir. 1969); and *Medical Center of Indep. v. Califano*, 433 F.Supp. 837 (W.D.Mo.1977). None of these cases involved section 1983. In *Gooley*, the discharged employees were CETA employees who were held not entitled to a pretermination hearing; no other constitutional claim was asserted. The employees were required to ex-

haust administrative remedies pursuant to federal CETA rules. In *Norton*, the discharged employee chose to pursue administrative remedies before seeking federal relief and was ultimately found not to have been deprived of any constitutional rights. The *Medical Center* case was a dispute over administration of the medicare program and involved neither section 1983 nor an employment issue.

*Eyck,* 572 F.2d 1233, 1239 (8th Cir. 1978). Most Circuits facing the question have squarely reached the same holding. *United States ex rel. Ricketts v. Lightcap,* 567 F.2d 1226 (3d Cir. 1977); *McCray v. Burrell,* 516 F.2d 357 (4th Cir. 1975); *Gillette v. McNichols,* 517 F.2d 888 (10th Cir. 1975); *Jones v. Metzger,* 456 F.2d 854 (6th Cir. 1972). As these cases state, the no-exhaustion rule is supported by unambiguous Supreme Court decisions.[5] We adhere to this rule and find that it was error to require the plaintiffs to pursue possible administrative remedies before seeking section 1983 relief.

■ It is nonetheless appropriate for the district court to defer decision on the First Amendment issues because such issues lack ripeness in light of the injunction that was entered. The ripeness doctrine functions to ensure that issues are presented with the clarity and concreteness that accompanies the threat of actual harm or loss. *See, e.g., Socialist Labor Party v. Gilligan,* 406 U.S. 583, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1973); Wright & Miller, Fed.Prac. & Proc., § 3532 (1975). Here, the district court enjoined the attempted terminations and required the defendant to comply with applicable grievance procedures if the terminations are to be pursued. It is possible that the termination attempt will be abandoned or that no terminations will ultimately result. Because the thrust of plaintiffs' section 1983 action involves allegedly wrongful discharges, removal of the threat of such discharges renders the claim unripe for decision. It therefore is proper for the district court to retain jurisdiction over the First Amendment claims but to defer action thereon until the issues become clear and necessary to decide.

■ The ripeness doctrine addresses some of the concerns of those who are critical of the no-exhaustion rule in section 1983 cases. It ensures that only *actual* deprivations of federal rights can be the basis of section 1983 relief.[6] Requiring exhaustion, on the other hand, would sweep too far. Even when a plaintiff has established that his federal rights have been deprived in fact through state action, he would nonetheless be required to pursue possible remedies from those responsible for such deprivation before seeking judicial relief. We decline to impose such a burden.

The district court is affirmed as modified and the case is remanded for proceedings consistent with this opinion.

---

5. The Fifth Circuit recently reversed itself to hold that exhaustion of remedies may be required when the adequacy of the administrative remedy meets five criteria. *Patsy v. Florida Int'l Univ.,* 634 F.2d 900, 913 (5th Cir. 1981) (en banc), *cert. granted,* —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81. Although we adhere to the no-exhaustion rule that appeared to be well

settled, we note that even under the *Patsy* criteria, the possible administrative remedy in the present action would be too plainly inadequate to require exhaustion.

6. Of course, when such a deprivation is imminent, injunctive relief may be appropriate if the applicable criteria are otherwise met.