**In re The RATH PACKING COMPANY, an Iowa corporation, Debtor.**

**The RATH PACKING COMPANY, Plaintiff,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, CLC; Local No. 171, United Food and Commercial Workers International Union; and The National Labor Relations Board, Defendants.**

**Bankruptcy No. 83–02293.
Adv. No. 84–0072W.**

United States Bankruptcy Court,
N.D. Iowa.

March 28, 1984.

See also Bkrtcy., 36 B.R. 979, 35 B.R. 615.

Jenner & Block, Washington, D.C., R. Fred Dumbaugh, Cedar Rapids, Iowa, Charles F. Swisher, Waterloo, Iowa, for plaintiff.

Peggy Hillman, Chicago, Ill., Robert E. Funk, Jr., Kansas City, Kan., and Nicholas W. Clark, Washington, D.C., for United Food & Comm'l Workers Int'l Union.

Margery E. Lieber and Corinna L. Metcalf, Attys., N.L.R.B., Washington, D.C., Herbert S. Dawidoff, Regional Atty., N.L.R.B., Minneapolis, Minn., James H. Reynolds, U.S. Atty., N.D. Iowa, Dubuque, Iowa, for defendants.

*Findings of Fact, Conclusions of Law, and ORDERS Denying and Dismissing Complaint for Injunctive and Other Relief*

WILLIAM W. THINNES, Bankruptcy Judge.

Experiencing financial pressure from its major creditor, The Rath Packing Company (Rath) in February 1983 successfully negotiated a wage deferral with its Local Union (Local). During these negotiations, Rath allegedly did not invite the participation of the United Food and Commercial Workers International Union (Union). In March 1983, the Union filed unfair labor practice charges with the National Labor Relations Board (Board) against Rath. A hearing before the Board was scheduled for July 1983, but was postponed at the request of the parties. On November 1, 1983, Rath filed a voluntary Chapter 11 petition in this Court. In light of the rescheduling to March 29, 1984, of the hearing before the Board, Rath filed the instant adversary Complaint, seeking injunctive and other relief.

Representing Rath were Attorneys Ronald R. Peterson and Catherine Steege, Chicago, and R. Fred Dumbaugh, Cedar Rapids. Attorneys Robert E. Funk, Jr., and Nicholas W. Clark, Washington, D.C. and Peggy A. Hillman, Chicago, represented the Union. The Board was represented by Attorneys Corinna L. Metcalf and Margery E. Lieber, Washington, D.C., and Herbert S. Dawidoff, Minneapolis, Minnesota.

## I. *Procedural History and Statement of the Case*

Confronting this Court are two requests for relief—one in the form of a motion and one an adversary complaint. Because of the distinction between contested matters and adversary proceedings, the following discussion is necessary to clarify the record.

On February 21, 1984, Rath filed a "Motion for Temporary Protective Order" (Motion). The Motion sought an entry of a temporary protective order barring the Union from proceeding before the Board on March 29, 1984. In addition to the filing of the Motion, Rath, on February 22, 1984, filed an adversary complaint (Complaint) against the Union. The Complaint contained two requests for relief: (i) an order enjoining the Union from "prosecuting" the unfair labor practice charge before the Board on March 29, 1984, and (ii) an order subordinating any claims of the Union to the claims of all other creditors.

A hearing was held before this Court on March 2, 1984, on the Motion and the Complaint. After the hearing, this Court directed the parties to file briefs by March 23, 1984. Briefs have been timely filed and this Court, thus being fully advised, now makes the following Findings of Fact, Conclusions of Law and Orders pursuant to F.R.B.P. 7052.

### A. *Motion for Temporary Protective Order*

As indicated earlier, the Motion was filed *before* the Complaint was filed. It thus

appeared to this Court at that time that the Motion was part of the bankruptcy proceeding and not a component of any adversary proceeding. Since the initial filing of the Motion, however, Rath has amended the Motion to include the Board as a defendant. This amended Motion when filed contained an adversary designation. It therefore appears to this Court that the Motion, as amended, is part of the Adversary Complaint now pending before this Court. Indeed, were the Motion not part of an adversary complaint, it would be treated as a contested matter under F.R.B.P. 9014. At least to the extent that no formal designations of plaintiff and defendant are required, such contested matters are nonadversary in nature. Because the relief requested by Rath all fall under the rubric of an adversary proceeding, *see* F.R.B.P. 7001(7), (8) (injunctive relief and subordination are adversary proceedings), this Court now finds and concludes that the only pending matter is the adversary proceeding.

### B. *Adversary Complaint*

The Complaint at bar was filed on February 22, 1984. Named as the only defendant was the Union. Before the Union filed an answer, Rath moved under F.R.C.P. 15 (made applicable to adversary proceedings by F.R.B.P. 7015) to amend its Complaint. F.R.C.P. 15(a), (c) provide:

(a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party;

and leave shall be freely given when justice so requires....

\*  \*  \*  \*  \*  \*

(c) Relation Back of Amendments.... An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would been brought against him.

Reviewing the record then before this Court,[1] an order was entered granting Rath's Motion to Amend. This first amended Complaint differed from the original complaint in two respects: the addition of the Board as a defendant and the addition of Division III, which prayed for an order enjoining the Union from prosecuting any charges before the Board as a result of this Court's order granting rejection of various collective bargaining agreements. *See In re Rath Packing Co.*, 36 B.R. 979, 11 B.C.D. 498 (Bkrtcy.N.D.Iowa 1984). Most significantly, the prayer in the first amended complaint did *not* seek any relief against the Board.

On March 23, 1984, the day briefs were ordered to be filed, and six days before the scheduled hearing before the Board, Rath filed yet another motion to amend its complaint. This Motion sought permission to amend the prayers in the Complaint such that the Board would also be affected if the requested relief was granted. In other words, this Amended Complaint sought injunctions against the Board as well as the Union and subordination of the claims of the Union and the Board.

---

**1.** The Union filed a Motion to Dismiss on the same day Rath filed its Motion to Amend the complaint. No answer was filed by the Union. Because a motion is not a responsive pleading within the meaning of Rule 15(a), *Minnesota ex rel. Humphrey v. Standard Oil Co.*, 568 F.Supp.

556, 559 (D.Minn.1983); *compare* F.R.C.P. 7(a) *with id.* 7(b), the filing of a motion does not affect the operation of F.R.C.P. 15(a). Moreover, the Board seemed not to resist Rath's Motion to Amend its complaint.

F.R.C.P. 15(a) permits *one* amendment "as a matter of course" before a responsive pleading was filed. As indicated earlier, Rath first moved to amend its Complaint to include the Board as defendant. Consistent with Rule 15(a), this Court summarily granted that Motion. The instant amendment is, however, a *second* attempt. Therefore, the "as a matter of course" rule no longer applies. *See In re Cessna Distributorship Antitrust Litigation,* 532 F.2d 64 (8th Cir.1976). Instead, Rath "may amend his pleading only by leave of court." F.R.C.P. 15(a).

■ Reaffirming the language in Rule 15(a), the Supreme Court in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) held that leave to amend should be liberally granted. Consistent with this holding, courts have generally permitted amendment where the moving party has not been guilty of bad faith and is not acting for purposes of delay, and when the opposing party will not be unduly prejudiced. 1 J. Moore, A. Vestal, & P. Kurland, *Moore's Manual* § 9.09[3], at 9–42 (1982). For example, "[w]here the facts on which a previously unasserted claim is based are all known or available to all parties, there is no prejudice in allowing an amended complaint." *Buder v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690, 694 (8th Cir.1981). On the other hand, when the Motion to Amend was filed on the first day of a trial that was held nearly three years after suit was filed, denial of a Motion to Amend was proper. *Poe v. John Deere Co.,* 695 F.2d 1103, 1107 (8th Cir. 1982). Similarly, a Motion to Amend was denied when it was filed one week after the hearing, particularly in light of the "need to expedite" relief. *Liddell v. Board of Education,* 667 F.2d 643, 654 (8th Cir.), *cert. denied sub nom. Caldwell v. Missouri,* 454 U.S. 1081, 102 S.Ct. 634, 70 L.Ed.2d 614 (1981). The decision to grant or deny a Motion to Amend is, of course, "left to the discretion" of this Court. *See Kaufmann v. Sheehan,* 707 F.2d 355, 357 (8th Cir. 1983).

■ Application of the series of Eighth Circuit decisions discussed above may suggest that the instant Motion to Amend should be denied. First it appears to this Court that there is no reason why the initial and first amended Complaint sought no relief against the Board. Indeed, at the hearing the parties proceeded on the assumption that Rath sought relief against the Union only. In the brief filed by the Board, for example, the Board's contentions were apparently premised on its understanding that "[t]he debtor has not requested the Court to enjoin the Board's proceedings." Board Brief at 4. Second, in view of the fact that the Motion was filed only five days before this Court's decision herein, it might not have been fair or practical to require the Board to appear and to resist the Motion. While this Court by so observing does not find bad faith or delay tactics on Rath's part, one may only surmise why such a motion was not made earlier.

On the other hand, this Court is mindful that the Board has been involved with the Complaint at bar almost since its initial filing. Moreover, compared with the first amended Complaint, the second amended Complaint contains no additional factual allegations or legal theories. In other words, the Board seems to have been well aware of Rath's position, even though the initial and first amended Complaint did not seek relief against the Board. These factors, of course, militate against denial of Rath's Motion.

In light of this Court's eventual conclusion on the merits, *see* Div. II–IV, *infra,* this Court concludes that no prejudice would result to the Board or the Union if the Motion to Amend were granted. An appropriate Order will be entered.

## II. *Subordination*

In Division II of its Complaint, Rath seeks an order "subordinating any claims of the ... Union or the NLRB arising out of the unfair labor practice charge to the claims of all other creditors." This claim

for relief is premised on 11 U.S.C. § 510(c)(1), which provides:

> (c) ... after notice and a hearing, the court may—

> > (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest;

In *Socialist Labor Party v. Gilligan,* 406 U.S. 583, 588, 92 S.Ct. 1716, 1719, 32 L.Ed.2d 317 (1972), the Supreme Court observed that "[p]roblems of prematurity and abstractness may well present 'insuperable obstacles' to the exercise of" judicial function. Such "prematurity and abstractness" form the basis of the "ripeness" doctrine:

> [D]ifferences of opinion or conflicts of interest must be "ripe for determination" as controversies over legal rights. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.

*Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 243–44, 73 S.Ct. 236, 240–41, 97 L.Ed. 291 (1952). In *Wilson v. Robinson,* 668 F.2d 380 (8th Cir.1981), an action was filed by several sheriff deputies seeking a determination that threatened terminations by the sheriff-elect violated first amendment free speech rights and fourteenth amendment procedural due process guarantees. *See id.* at 382. As a result of the issuance of an injunction by the district court, the terminations did not take place. With respect to the first amendment claims, however, the district court deferred action. Affirming the deferral, the Eighth Circuit held:

> It is possible that the termination attempt will be abandoned.... It therefore is proper for the district court to ...

defer action thereon until the issues become clear and necessary to decide.

■ Applying the ripeness doctrine and analogizing the *Wilson* decision to the Complaint at bar, this Court finds and concludes that the subordination issue is not ripe for judicial resolution. The hearing before the Board has yet to be held. If held, the Board may find for Rath and not award the Union any damages. Stated otherwise, if Rath succeeds in its assertion that "[c]learly under prevailing case law, the Debtor did not commit an unfair labor practice," Rath Brief at 12, the Union or the Board will likely fail in extracting any claims from the bankruptcy estate or the debtor-in-possession. In sum, only after damages, if any, had been assessed would there arise, if at all, a subordination issue under § 510(c)(1). In the absence of such ascertainment, any judicial resolution of a § 510(c)(1) question is nebulous, contingent, premature, and abstract. Division II of Rath's Complaint should therefore be dismissed at this time, without prejudice to any party if and when a subordination question ripens.

### III. *Injunction Against Filing Unfair Labor Practice Charges Arising From Contract Rejection*

■ In *In re Rath Packing Co.,* 36 B.R. 979, 11 B.C.D. 498 (Bkrtcy.N.D.Iowa 1984), *appeal docketed,* No. —— (N.D.Iowa 1984), this Court granted Rath's application to reject various collective bargaining agreements. In Division III of its Complaint at bar, Rath seeks an order "enjoining the ... Union ... and the [Board] from prosecuting or hearing any charges arising out of the Debtor's rejection of its collective bargaining agreement or the Debtor imposition of new terms and conditions after that rejection." The Complaint does not, however, reveal any charges having been actually filed. Indeed, the Complaint merely recites that "the Debtor is informed and *believes* that" an unfair labor practice charge, arising from the Court's decision, has been filed."[2]

---

**2.** In its brief, the Board observed that an unfair     labor practice charge was indeed filed by the

Based on the discussions in Div. II, *supra*, this Court concludes that the injunctive relief requested herein is similarly not ripe for judicial resolution. As with the situation involving the subordination question in Division II of Rath's Complaint, any decision by this Court regarding a charge that *may* be filed, *but see* n. 2 *supra*, will be nebulous, contingent, premature, and abstract. For example, if the Union decides not [3] to file any charges, an order by this Court enjoining the Union from so doing will be a futile exercise of judicial power. Division III of Rath's Complaint should be dismissed.

### IV. Injunction Against Board Hearing

The sole remaining Division in Rath's Complaint seeks an order enjoining the Union *and* the Board from prosecuting or hearing the unfair labor practice charge scheduled for March 29, 1984.

### A. Jurisdiction [4]

In 1932, Congress enacted the Norris-LaGuardia Act. *See* Act of March 23, 1932, ch. 90, 47 Stat. 70. Specifically, Section 1 of the Act provides:

> No court of the United States, as defined in this chapter, shall have jurisdic-

---

local bargaining unit at Rath's San Antonio, Texas, plant. This charge was, however, withdrawn and the case has since been closed. Board Brief at 3–4. While this filing does confirm Rath's belief, the withdrawal of the charge leaves nothing to be enjoined.

**3.** The Supreme Court's opinion in *N.L.R.B. v. Bildisco*, — U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482, Bankr.L.Rep. (CCH) ¶ 69,580, at 84,126 (1984), holding that a debtor-in-possession who unilaterally breached a collective bargaining agreement committed no unfair labor practice may shed some light on the Union's decision.

**4.** While both the language of 29 U.S.C. § 101 and the Union's brief focus on jurisdiction, it should be observed that the real point of contention is whether this Court, or any federal court, has the *power* to issue an injunction. This distinction between "jurisdiction" and "power" is more than semantic in nature:

> [29 U.S.C. §§ 101–115] delimits the power of federal courts to issue injunctions, it does not

---

tion to issue any restraining order or temporary or permanent *injunction in a case involving or growing out of a labor dispute*, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101 (1982) (Emphasis added). Relying on this section of the Norris-LaGuardia Act, the Union [5] contends that this Court "lacks jurisdiction to grant the injunction requested." Union Brief at 5.

### 1. "Court of the United States"

By its terms 29 U.S.C. § 101 applies to a "court of the United States." 29 U.S.C. § 113(d) states that "[t]he term 'court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress." The first question, therefore, is whether a bankruptcy court is a "court of the United States" within the meaning of 29 U.S.C. § 113(d) and thus subject to 29 U.S.C. § 101.

At least three bankruptcy courts have expressly answered the above question in the affirmative. In *In re Petrusch*, 14

---

> remove federal jurisdiction to adjudicate controversies properly before the court. Even assuming, arguendo, that the ... court may be ultimately deemed without power to grant a particular form of relief, that does not imply that the court is entirely without jurisdiction to determine, by an appropriate hearing, whether to consider the matter at all.

*Bethlehem Mines Corp. v. United Mine Workers of America*, 476 F.2d 860, 862–63 (3d Cir.1973).

**5.** Unlike the Union, the Board did not make a Norris-LaGuardia challenge. This inaction is understandable in light of Rath's failure to seek any relief against the Board until the eleventh hour. *See* Div. I B, *supra*. Because 29 U.S.C. § 101 seems to be pervasive, this Court assumes that given the opportunity, the Board would have relied on the Norris-LaGuardia Act. *See* Board Brief at 13 ("the *gripes of Rath* ... go not to a matter properly before the Bankruptcy Court"). (Emphasis added). Therefore, the conclusion reached herein applies to the Union as well as the Board.

B.R. 825, 828 (Bkrtcy.N.D.N.Y.), *aff'd* 667 F.2d 297 (2d Cir.1981), *cert. denied,* 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982), the court clearly held that a "bankruptcy court is a federal court within meaning" of Norris-LaGuardia Act. Similarly, in *In re Sterling Mining Co.,* 21 B.R. 66, 68 (Bkrtcy.W.D.Va.1982), the court held that the Norris-LaGuardia "prohibition extends to bankruptcy courts"; *accord In re Catamount Dyers, Inc.,* 24 B.R. 59, 61 (Bkrtcy.D.Vt.1982). This Court agrees with the *Petrusch* rule.

### 2. *"Labor Dispute"*

■ 29 U.S.C. § 101 prohibits this Court from issuing "any restraining order or temporary or permanent injunction *in a case involving or growing out of a labor dispute.*" The next question, therefore, is whether a hearing before the Board involving an unfair labor practice charge constitutes "a case involving or growing out of a labor dispute."

The term "labor dispute" is defined at 29 U.S.C. § 113(c):

The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or *representation* of persons in negotiating, fixing, maintaining, changing, or seeking to arrange *terms or conditions of employment,* regardless of whether or not the disputants stand in the proximate relation of employer and employee.

A cursory reading of § 113(c) leads to the conclusion that the pending hearing before the Board involves a "labor dispute." First, in the charge filed with the Board, the Union asserted that Rath, "by having circumvented the [Union]" in its February 1983 wage deferral negotiations, "violated ... Sections 8(a)(1) and (5) of the Act." *See* 29 U.S.C. § 158(a)(1), (5) (1982). Clearly the literal provisions of 29 U.S.C. § 158(a)(1) and (5) (referring to 29 U.S.C. § 157 and § 159(a) respectively) focus on questions of "representation":

Employees shall have the right to ... bargain collectively through *representatives....*

\*   \*   \*   \*   \*   \*

*Representatives* ... selected for the purposes of collective bargaining shall be the exclusive *representatives* of all employees....

29 U.S.C. § 157, 159(a) (Emphasis added). *See, e.g., Carpenters Local Union No. 1846 v. Pratt-Farnsworth Inc.,* 690 F.2d 489, 512 (5th Cir.1982) ("One of the principal policies of ... section 7 [29 U.S.C. § 157] ... is ... designation of representatives of their own choosing...."); *N.L.R.B. v. Local 3, Int'l Broth. Elec. Workers,* 542 F.2d 860, 866 (2d Cir.1976) ("The right to select one's bargaining representative is protected by the express terms of" 29 U.S.C. § 157); *see also United Dairy Farmers Co-op Ass'n v. N.L.R.B.,* 633 F.2d 1054, 1066 (3d Cir.1980); *W.W. Cross & Co. v. N.L.R.B.,* 174 F.2d 875, 878 (1st Cir.1949) (Under 29 U.S.C. § 159(a), "Congress intended to impose upon employers a duty to bargain collectively with their employees' representatives...."). Second, wages undoubtedly fall within the category of "terms or conditions of employments." *Marine Cooks & Stewards v. Steamship Co.,* 362 U.S. 365, 370, 80 S.Ct. 779, 783, 4 L.Ed.2d 797 (1960).

In sum,[6] this Court concludes that under 29 U.S.C. § 101, it should not grant the injunctive relief requested by Rath.

**6.** 29 U.S.C. § 101 does not per se prohibit the granting of injunctive relief: by its terms it seems to authorize injunctive relief "in a strict conformity with the provisions of" 29 U.S.C. §§ 101–115. One such provision is 29 U.S.C. § 107, which permits injunctive relief if five standards are met. At least with respect to the "substantial and irreparable injury" standard in § 107(b), Rath did not meet the requirement. The "irreparable harm" alleged by Rath are (i) the expense and inconvenience of litigating before the Board and (ii) outside buyers may be discouraged from aiding Rath in its reorganization effort if monetary damages—which presumably will have to be assumed by the potential buyer—were indeed awarded the Union by the Board at or around the time negotiations are being conducted. These allegations do not constitute irreparable injury. First, it has been uniformly recognized that mere inconvenience and litigation expense are inadequate reasons to

### B. *11 U.S.C. §§ 105, 362*

Cognizant of the Norris-LaGuardia Act, Rath nonetheless argues that this Court may, based on 11 U.S.C. § 105 or § 362, stay the hearing before the Board.

### 1. *11 U.S.C. § 362*

■ 11 U.S.C. § 362(a)(1) provides that, inter alia, the filing of a bankruptcy petition automatically stays the commencement or continuation of an administrative proceeding against the debtor. In light of the Norris-LaGuardia prohibition, a question arises as to whether this Court may nonetheless issue [7] a stay pursuant to 11 U.S.C. § 362.

Assuming, without deciding,[8] that the Norris-Laguardia Act does not preempt 11 U.S.C. § 362 and further assuming that the automatic stay thus applies, this Court concludes that 11 U.S.C. § 362(b)(4) exempts

the Board hearing from the operation of the automatic stay.

11 U.S.C. § 362(b)(4) provides:

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

\*     \*     \*     \*     \*     \*

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

Lower courts examining the issue at bar have reached different results. *Compare, e.g., In re Theobald Industries, Inc.,* 16 B.R. 537, 539 (Bkrtcy.D.N.J.1981) (unfair labor charge not within § 362(b)(4) coverage) *with, e.g., In re Brada Miller Freight Systems, Inc.,* 16 B.R. 1002, 1009 (D.C.N.D. Ala.1981), *rev'd on other grounds,* 702 F.2d 890 (11th Cir.1983) (unfair labor charge within scope of § 362(b)(4). To this

justify injunctive relief. *Frey v. Commodity Exchange Authority,* 547 F.2d 46, 49 (7th Cir.1976); *MacBeth v. Utah,* 332 F.Supp. 1191, 1193 (D.Utah 1971). Second, the allegation that potential buyers may be discouraged is speculative and unconvincing. For example, if Rath prevails at the Board hearing, potential buyers would be encouraged to aid Rath in that the Union's claims would have been proven groundless. Further, were this Court to enjoin the hearing before the Board, the Union's claim will nonetheless have to be resolved by some tribunal at some point in time. Given the fact that tomorrow the Board will adjudicate the Union's claim, it is difficult to imagine a purchaser who would prefer to speculate and await resolution of the Union's claim at a later time.

7. The § 362 stay is automatic in that it operates upon filing of the bankruptcy petition. *E.g., In re Eisenberg,* 7 B.R. 683, 686 (Bkrtcy.E.D.N.Y. 1980). Thus, no formal service of notice of its operation is necessary. *E.g., In re Miller,* 22 B.R. 479, 481 (D.C.D.Md.1982). In other words, usually no specific order enforcing § 362 is issued. *But see* F.R.B.P. Official Form 16. Indeed, most § 362 questions are brought before the court via a contempt citation, alleging violations of the automatic stay. Technically, because the Board hearing has not yet commenced, there may be no violation justifying judicial intervention. Nonetheless, to the extent that Rath is seeking an order from this Court concerning the applicability of 11 U.S.C. § 362,

this Court treats the relief requested as one for declaratory judgment. *See* F.R.B.P. 7001(9).

8. An argument may be made that independent of Norris-LaGuardia and *Nathanson v. N.L.R.B.,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952) (pre-Bankruptcy Code case holding that the Board, not the bankruptcy referee, possessed sole authority to adjudicate unfair labor practice charge), this Court's jurisdictional grant under 28 U.S.C. 1471(b) does not extend to an N.L.R.B. proceeding. This argument is premised on a historical analysis of the term "civil proceeding" in the context of bankruptcy jurisdiction. At least one court and one commentator have accepted this argument. *In re Adams Delivery Service, Inc.,* 24 B.R. 589, 592 (Bkrtcy. App. 9th Cir.1982); 1 *Collier on Bankruptcy* ¶ 3.01, at 3–70 to –71 (15th ed. 1983). One commentator has, however, ably summarized the conflicting policy considerations as follows:

[I]t may well be that the full force of the NLRA policies should be implemented in an obviously ongoing Chapter 11 situation—free of restraint or control by the bankruptcy court. But in the opposite situation it does not appear to make much sense to permit the NLRB to flail the debtor's soon-to-be corporate corpse (really the other creditors) with additional monetary liabilities that stem directly from the reorganization effort, and which will effectuate no statutory policies if that effort fails.

2 *Broken Bench Review* No. 1, at 6 (Jan. 83).

date, the *only*[9] circuit court decision on point is *N.L.R.B. v. Evans Plumbing Co.*, 639 F.2d 291 (5th Cir.1981).

In *Evans Plumbing*, the debtor filed a bankruptcy petition one day before a scheduled unfair labor practice hearing before the Board. *Id.* at 292. Concluding that such a hearing falls within the § 362(b)(4) exception, the Fifth Circuit held:

> It is clear that the NLRB is a governmental unit. This action was undertaken to enforce the federal law regulating the relationship between employer and employee. We can safely conclude therefore that this is an exercise of police or regulatory powers which places it within the § 362(b)(4) exemption to the automatic stay.

*Id.* at 293. In the absence of any other definitive appellate decision,[10] this Court will follow *Evans Plumbing*.

### 2. *11 U.S.C. § 105*

■ In addition to its 11 U.S.C. § 362 contention, Rath urges this Court to issue the requested injunctive relief pursuant to 11 U.S.C. § 105(a). That section provides:

> (a) The bankruptcy court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of this title.

Like the § 362 situation, the first question is whether the Norris-LaGuardia Act preempts this Court's power under § 105(a). However, assuming, without deciding, *cf.* n. 8 *supra*, that Norris-LaGuardia does not preempt § 105(a), this Court concludes that relief should not be granted.

All parties in the Complaint at bar seem to agree that a § 105(a) analysis in this context begins with *Nathanson v. N.L.R.B.*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952). In *Nathanson*, the Board, before the filing of an involuntary bankruptcy petition, adjudged the employer guilty of an unfair labor practice. *Id.* at 26, 73 S.Ct. at 81. The question before the Court was whether the claim arising from the unfair labor practice should be liquidated by the Board or the bankruptcy court. *See id.* at 29, 73 S.Ct. at 83. Concluding that the Board, not the bankruptcy court, should determine the amount of such claim, the Court reasoned:

> The bankruptcy court normally supervises the liquidation of claims. But the rule

---

**9.** At least two other circuit courts have reached results similar to that of *Evans Plumbing*. *See In re Bel Air Chateau Hospital, Inc.*, 611 F.2d 1248, 1250–51 (9th Cir.1979); *In re Shippers Interstate Service*, 618 F.2d 9, 13 (7th Cir.1980). These two decisions focussed, however, on stay provisions under the Bankruptcy Act. In view of the admonition that "[c]ases decided under the old Bankruptcy Act on the stay cannot be applied to the Sec. 362 stay," *In re Johnson*, 8 B.R. 371, 373 (Bkrtcy.D.Minn.1981), *Bel Air* and *Shippers* will not be discussed.

**10.** The closest Eighth Circuit decision on point is *Missouri v. United States Bankruptcy Court*, 647 F.2d 768 (8th Cir.1981). Relying on *Missouri*, this Court in *In re Rath Packing Co.*, 35 B.R. 615, 621–22 & n. 15 (Bkrtcy.N.D.Iowa 1983), held that under Iowa's Workers' Compensation statute, Iowa Code Ch. 87, the Iowa Insurance Commissioner's control over employers' insurance status was not an exercise of "police or regulatory power" under § 362(b)(4). More specifically, this Court noted that, generally, remedial statutes—as opposed to preventive ones—are not within the scope of § 362(b)(4).

Based on *Missouri* and similar cases, Rath argues that the Board hearing "promotes only

the ... Union's selfish business concerns to the detriment of the employee/shareholders and the public." Rath Brief at 17. Thus contending, Rath urges this Court to find that § 362(b)(4) is inapplicable.

The situation at bar is different, however, than that involved in *Rath Packing Co.* Here, the National Labor Relations Act is purposed at *prevention* of unfair labor practices. Indeed, 29 U.S.C. § 160(a) provides:

> The Board is empowered to *prevent* any person from engaging in any unfair labor practice ... affecting commerce.

Thus, the Complaint at bar satisfies the preventive-remedial distinction recognized in *Rath Packing Co.*

Further, Rath's "selfish business" assertion appears to be misplaced. The statutory structure of the N.L.R.A. is such that only after the Board made a "reasonable cause" determination will it, pursuant to 29 U.S.C. § 160(b), issue a formal complaint. Thereafter, the Board acts as a "prosecutor" and after a hearing issues, inter alia, a cease and desist order. Clearly the exercise of such power by the Board does not "primarily relate to the protection of the interest in the debtors' property." *Missouri*, 647 F.2d at 776.

is not inexorable. A sound discretion may indicate that a particular controversy should be remitted to another tribunal for litigation. And where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court normally should stay its hand pending an administrative decision. It is the Board, not the referee in bankruptcy nor the court, that has been entrusted by Congress with authority to determine what measures will remedy the unfair labor practices. We think wise administration therefore demands that the bankruptcy court accommodate itself to the administrative process and refer to the Board the liquidation of the claim, giving the Board a reasonable time for its administrative determination.

*Id.* at 73 S.Ct. at 83. Relying on the broad holding of *Nathanson,* the Union and the Board argue that this Court should not issue the requested injunctive relief. On the other hand, relying on the specific language in *Nathanson* that "the bankruptcy court *normally* should stay its hand," Rath argues that this Court may in its discretion issue an injunction. Examining the policies and specific facts of this proceeding, this Court concludes that it should not issue any § 105(a) stay.

First, as a general proposition, "the equitable powers granted to the bankruptcy court by the statute are not unlimited." *Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir.1983) (construing § 105(a)). Second, *post-Nathanson* courts examining the § 105(a) power in this context have held that a stay may be justified only when the challenged administrative proceedings "threaten" the assets of a bankruptcy estate. *E.g., In re Bel Air Chateau Hospital,* 611 F.2d at 1251 (Act case); *In re Seeburg Corp.,* 5 B.R. 364, 368 (Bkrtcy.N.D.Ill.1980). The issue at bar thus becomes whether Rath has alleged sufficient "threats" to justify relief.

As indicated in n. 6 *supra,* Rath essentially alleged two "threats": litigation expense and discouragement to potential buyers/investors. These allegations do not raise to the level that justifies § 105(a) relief. First, as discussed in n. 6 *supra,* litigation expense and inconvenience are inadequate reasons to justify injunctive relief. More specifically, this Court finds Rath's expense argument unconvincing: if this Court were to grant the injunction, the unfair labor practice charges will nonetheless have to be heard. Whether that hearing is before this Court or some other tribunal, the fact remains that Rath will incur expenses in defending itself. *Cf. In re Tucson Yellow Cab Co.,* 27 B.R. 621, 623 (Bkrtcy.App. 9th Cir.1983) ("we fail to see how the existence of employees' claim ... forms any greater threat to the debtor's estate, when the NLRB is assessing the amount of Tucson Yellow Cab's debt, than if the bankruptcy court were, itself, to make that judgment." Second, with respect to potential buyers being discouraged, Rath's allegation is similarly unpersuasive. *See* n. 6 *supra.* Third and perhaps most important, the Board concedes that it would not pursue any collection of monies due without authority from this Court. Board Brief at 13; *accord* Union Brief at 9. Indeed, even without this concession, the Board must, presumably, first seek enforcement of the damages from a Court of Appeals. *See* 29 U.S.C. § 160(e). Moreover, after an enforcement order, this Court "will yet retain some authority to supervise the allowance and payment of those claims." *In re Tucson Yellow Cab Co.,* 27 B.R. at 623; *see also* 11 U.S.C. §§ 502, 507.

### C. *28 U.S.C. § 1651*

■ In addition to its 11 U.S.C. §§ 105(a) and 362 arguments, Rath has requested relief pursuant to the All Writs Act, 28 U.S.C. § 1651(a), which provides:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in and of their respective jurisdictions and agreeable to the usages and principles of law.

To the extent that the All Writs Act applies, this Court concludes that no injunc-

tion should issue. First, there is no irreparable injury or the like that would justify injunctive relief. *See supra.* Second, the scheduled hearing before the Board does not appear to affect this Court's jurisdiction. Indeed, as indicated in Div. IV(B)(2), any claim will be subject to this Court's power and duty regarding allowability and priority. *See* 11 U.S.C. §§ 502, 507. Rath's 28 U.S.C. § 1651(a) argument should be rejected.

D. *Conclusion*

In *In re Rath Packing Co.*, 36 B.R. 979, 11 B.C.D. 498, 509 (Bkrtcy.N.D.Iowa 1984), this Court observed that "the National Labor Relations Board, not the Bankruptcy Court, is perhaps better equipped to resolve labor disputes." The analysis conducted in this opinion leads this Court to the same conclusion. The hearing before the Board scheduled for March 29, 1984, should not be enjoined. IT IS THEREFORE ORDERED that:

1. The Motion for Temporary Protective Order, as amended, filed by The Rath Packing Company, is denied.

2. The Motion to File Amended Complaint filed by The Rath Packing Company on March 23, 1984, is granted.

3. The Complaint, as amended, filed by The Rath Packing Company, is denied and dismissed.