Porter T. STOW, Appellee,

v.

E.W. COCHRAN, Mayor of the City of Corning, Arkansas, and as an Individual; Barry Fielder, Chief of Police for the City of Corning, Arkansas, and as an Individual; Gene Kellett; Edwin Ahrent; Clarence Thomas; and Dorothy Johnson, Members of the City Council of the City of Corning, Arkansas; and The City of Corning, Arkansas, Appellants.

Nos. 86–1741, 86–1945.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1987.

Decided June 1, 1987.

Winston Bryant, North Little Rock, Ark., for appellants.

Clifford M. Cole, Piggott, Ark., for appellee.

Before ROSS and BOWMAN, Circuit Judges, and NANGLE,* District Judge.

BOWMAN, Circuit Judge.

Defendants appeal from a judgment entered in accordance with a jury verdict for plaintiff Porter Stow on his claim under 42 U.S.C. § 1983 that he was discharged from his position as a patrolman with the Corning, Arkansas Police Department without procedural due process. On appeal defendants argue that (1) Stow had no "property" interest in his position; (2) the individual defendants were entitled to qualified immunity; (3) the District Court erred in permitting Stow to testify as to prejudicial hearsay statements made by two persons who were not present and did not testify at trial; and (4) the District Court abused its discretion in awarding $17,290 in attorney's fees to plaintiff. For the reasons discussed below, we hold that as a matter of law Stow had no property right to continued employment in his position as a patrolman and that he thus could be discharged without procedural due process. There being no constitutional violation, Stow has failed to make out a claim under § 1983. We reverse.

## I.

Porter T. Stow was hired under an oral employment contract as a police dispatcher by the City of Corning, Arkansas in May 1974. In January 1978, the City issued to its employees a handbook entitled "Personnel Policies and Employee Handbook," which was admitted into evidence at trial as Defendant's Exhibit (Def. Exh.) 7. In August 1979 Stow was appointed to the position of patrolman. Shortly thereafter then police chief Louis Walls stated to Stow and the other officers that they were, in Walls's view, "lifetime" employees. Trial Transcript (Tr.) at 127. Walls explained that by such an assurance he was attempting to impart a sense of professionalism and job security among his officers. Stow testified that another former police chief, Leonard Bell, also told him (sometime in 1983 or 1984) that he was a "full-time" employee and "could not be fired for just any reason, that it had to be for an awfully good reason to be fired." Tr. at 86–87.

The current police chief, defendant Barry Fielder, assumed his position in October 1984. Shortly thereafter, Fielder recommended to the Mayor, defendant E.W. Cochran, that Stow be discharged. Cochran accepted Fielder's recommendation. Stow received a letter, dated December 18, 1984 and signed by both Fielder and Cochran, informing him of his discharge. The letter listed five reasons for his being discharged.[1] Stow thereafter requested a hearing before the Mayor and the City Council. A hearing was scheduled for January 11, 1985 during a regular council meeting, but that meeting was cancelled because of bad weather and an illness of the Mayor's wife. The meeting and hearing were rescheduled for January 14, but Stow and his attorney apparently were not notified of this and therefore were not present.

Stow then filed this action on January 15, 1985. After a two-day trial, the jury returned a verdict for Stow, finding that he had a property right to continued employment in his position as a patrolman and that he was unjustifiably discharged without procedural due process. Stow was awarded $5000 in compensatory damages and $1000 in punitive damages against

---

* The HONORABLE JOHN F. NANGLE, Chief Judge for the United States District Court for the Eastern District of Missouri, sitting by designation.

1. The letter listed the following reasons: (1) "[i]nability to take orders from superior officer"; (2) "[i]nability to cooperate with fellow officers"; (3) "[r]epeatedly warned about spending to [sic] much time out of the car when you should have been patrolling"; (4) "[r]epeatedly warned about your attitude you reflect upon other's [sic] and the police department"; and (5) "[y]our refusal to give reason for not showing up for court and for the officer's [sic] meeting as required on 18 December 1984." Def. Exh. 2.

each individual defendant (Mayor Cochran and Chief Fielder) and $5750 in compensatory damages against the City. The District Court entered judgment in accordance with the jury verdict. In 86–1741 defendants appeal from that judgment. The District Court thereafter awarded plaintiff $17,290 in attorney's fees pursuant to 42 U.S.C. § 1988. In 86–1945 defendants appeal from that order. The two appeals have been consolidated for decision.

## II.

For nearly a century the Arkansas courts consistently have adhered to the common law rule that an employment contract that does not bind the employee to serve for a specified length of time may be terminated at will by either party, even though the contract provides that the employee can be discharged only for cause. *See Gaulden v. Emerson Electric Co.*, 284 Ark. 149, 680 S.W.2d 92, 93 (1984). This rule is commonly referred to as the "employment at will" doctrine. Thus, in the absence of evidence to the contrary, Stow's employment is presumed to be at will, providing him with no constitutionally protected property interest in his patrolman position. Stow concedes that he had no written employment contract with a definite term of duration and that there was no state statute or regulation or city ordinance that provided him with a property interest. *Cf. Brockell v. Norton*, 688 F.2d 588, 591 (8th Cir.1982). Stow contends, however, that he had a property interest under any of four theories.

■ First, Stow asserts a property interest to continued employment by virtue of a two-week notice requirement[2] in order to be paid for vacation time accrued or earned but not taken at the time of an employee's resignation. Stow contends that this notice requirement effectively bound him to serve for a specified length of time, and, thus,

that his employment contract was not terminable at will by either party. This exact contention has been rejected, however, by the Arkansas Supreme Court. *See French v. Dillard Department Stores*, 285 Ark. 332, 686 S.W.2d 435, 436 (1985) ("Such a provision ... does not assure the employee of a job for any specified length of time. Rather to the contrary, it confirms the employee's right to quit."); *cf. Bryant v. Southern Screw Machine Products Co.*, 288 Ark. 602, 707 S.W.2d 321, 322 (1986) (provision in employee handbook that after 60–day probationary period employee entitled to certain fringe benefits did not change employee's at-will status).

■ Second, Stow claims a property right was created by virtue of an "established policy for disciplinary action" against police officers. Stow contends that there was an unwritten "de facto" procedure established by the City when taking disciplinary action against police officers. Under that procedure, (1) the subject officer would be temporarily suspended, (2) the department (usually the chief of police) would conduct an investigation and make a recommendation to the Mayor, (3) the officer would receive a hearing before the Mayor and the City Council, and (4) thereafter the Mayor would take appropriate disciplinary action. The evidence was sufficient, Stow contends, to show a de facto policy that required the City to afford Stow a hearing prior to any disciplinary action.

Though the evidence at trial did tend to support Stow's claim of the existence of such a de facto policy, his theory is insufficient as a matter of law to support a property right to continued employment. This Court recently rejected the contention that the existence of a grievance procedure alone is sufficient to create a property interest. *See Hogue v. Clinton*, 791 F.2d 1318, 1324 & n. 10 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 648, 93 L.Ed.2d 704

---

**2.** The notice requirement was set forth in a section of the City's employee handbook entitled "Resignations." That section read, in relevant part, as follows: "To resign in good standing and receive benefits attendant thereto, an employee must provide two (2) weeks notice to the department head and/or the Mayor. Employ-

ees who have not completed one full year of employment from date of hire will not be eligible for any vacation pay upon resignation. An established [eligible?] employee who resigns in good standing will be paid for vacation days earned, but not taken, up to the time of his resignation...." Def. Exh. 7, at 7.

(1986). The Court in *Hogue* stated that "[g]rievance procedures that do not establish any grounds upon which termination must be based do not in themselves create a property interest in employment." *Id.* 791 F.2d at 1324. Like the grievance procedures in *Hogue*, the de facto procedure here "creates only an expectancy of review, not of continued employment" and "place[s] no significant substantive restrictions" on the decisionmaker's discretion. *Id.; see also id.* at n. 10 ("That an employee can expect review upon termination does not in itself create a legitimate expectancy of continued employment."); *Cato v. Collins*, 539 F.2d 656, 660–61 (8th Cir.1976); *Dorr v. County of Butte*, 795 F.2d 875, 877 (9th Cir.1986); *Skeets v. Johnson*, 805 F.2d 767, 775–81 (8th Cir.1986) (Bowman, J., dissenting) (citing other cases), *rev'd on reh'g*, 816 F.2d 1213 (8th Cir.1987) (en banc); *Weinstein v. University of Illinois*, 811 F.2d 1091, 1097 (7th Cir.1987) (proffer of procedure does not establish property interest in absence of substantive rules of entitlement, even if opportunity for hearing afforded others in past).

Stow cites *Wilson v. Robinson*, 668 F.2d 380, 382 & n. 2 (8th Cir.1981) for the proposition that "procedural rights" alone can create a substantive property right to continued employment. *See also Gerrin v. Hickey*, 464 F.Supp. 276, 280 (E.D.Ark. 1979) ("Applicable personnel regulations can create a protected interest if they reflect a *de facto* policy of established guidelines to be followed prior to dismissal."). Though *Wilson* does indeed stand for that proposition, we have serious reservations as to its current validity in view of recent Supreme Court decisions issued after *Wilson*.

In *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), the Supreme Court rejected the proposition that procedures alone can create a substantive property right:

> Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. If officials may transfer a prisoner "for whatever reason or for no reason at all,"

there is no such interest for process to protect. The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

*Id.* at 250–51, 103 S.Ct. at 1748–49 (citations and footnotes omitted). In *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court again rejected the theory urged by Stow and employed in *Wilson*. In *Hewitt*, a state prisoner contended that the mere fact the State had created a "careful procedural structure" to regulate its prison administration was sufficient to find a protected substantive (liberty) interest. The Court disagreed:

> The creation of procedural guidelines to channel the decisionmaking of prison officials is ... a salutary development. It would be ironic to hold that when a State embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts, while States that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause. The adoption of such procedural guidelines, without more, suggests that it is these restrictions alone, and not those federal courts might also impose under the Fourteenth Amendment, that the State chose to require.

*Id.* at 471, 103 S.Ct. at 871. *Cf. Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (stating that " '[p]roperty' cannot be defined by the procedures provided for its deprivation").

The *Wilson* Court, of course, did not have the benefit of these Supreme Court decisions. It is clear to us, however, in view of *Olim, Hewitt*, and this Court's decision in *Hogue*, that *Wilson v. Robinson* has effectively been overruled insofar as it holds that "procedural rights" alone can create an independent substantive property right to continued employment when none would otherwise exist. Accordingly, we believe that to this extent *Wilson* no longer

represents the law of this Circuit, and we decline to apply *Wilson* in the present case.

■ Stow's third theory to support his claim of a property right is based on another section in the employee handbook entitled "Disciplinary Action." That section provides as follows:

> Removal, demotion, reprimand, suspension or other disciplinary action shall be taken by the Mayor upon recommendation of the department heads.
>
> While working for the City, you have certain duties and responsibilities. The following will not be tolerated and shall be cause for disciplinary action to include possible [sic] separation from City employment and loss of benefits accrued.
>
> 1. Lying and/or any misrepresentation of facts that might affect City performance.
> 2. Stealing or other forms of dishonesty.
> 3. Fighting while on duty.
> 4. Insubordination.
> 5. Misrepresentation or omission of facts called for in the application form.
> 6. Failure to properly perform assigned duties.
> 7. Drunkenness, drinking on duty, or other conduct prejudicial to good order and discipline.

Def. Exh. 7, at 6. Stow argues that this provision gives rise to an "implied contract" that he would not be discharged without just cause, thus establishing a substantive property right entitled to procedural due process protection.

This Court recently rejected a similar contention in *Drake v. Scott*, 812 F.2d 395, 399–401 (8th Cir.1987). In *Drake*, the plaintiff-employee contended that a state agency's administrative regulation[3] assur-

ing employees that they would be terminated only for cause vested him with a protectable property right. The Court rejected that argument, relying on *Hogue v. Clinton*, 791 F.2d at 1324–25. The Court noted that in Arkansas "all employment contracts with no fixed term are terminable at will, *even if* there is a provision in the employment contract that an employee will not be discharged except for good cause." 812 F.2d at 400. We are bound by *Hogue* and *Drake*.

■ Finally, Stow contends that he was a "permanent" and "lifetime" employee and thus had a property right to continued employment such that he could not be discharged without cause or without a pretermination hearing. Stow bases this contention on the oral assurances made to him by former police chiefs Walls and Bell. *See* text, *supra* at 865.

Even assuming that it was reasonable to rely on these vague oral assurances, they were unauthorized and therefore were unenforceable and insufficient to support a claim of entitlement to continued employment. *See Smith v. Sorensen*, 748 F.2d 427, 431–32 & n. 2 (8th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985); *Horton v. Taylor*, 767 F.2d 471, 474 (8th Cir.1985). Walls himself conceded that he did not have the authority to offer Stow a lifetime job. Tr. at 139–140. Walls, Stow, and all other city employees were at-will employees who served at the pleasure of the Mayor. Tr. at 178; *see* Def. Exh. 7, at 2, 6. The cases are uniform that in such circumstances unauthorized assurances of job security do not create a property right. *See, e.g., Hatcher v. Board of Public Education and Orphanage*, 809 F.2d 1546, 1549–50 (11th Cir.1987); *Shlay v. Montgomery*, 802 F.2d

---

**3.** The regulation read as follows:

The tenure of every permanent employee is based on satisfactory performance of duties. Permanent appointment does not guarantee a right to the position regardless of performance level; satisfactory performance is a condition of continued employment in any position. An employee is subject to discharge, suspension, demotion, or other disciplinary action for any of the following causes: insub-

ordination, incompetence, unrehabilitated narcotics addiction, dishonesty, unrehabilitated alcoholism, conduct which adversely affects the employee's performance for the Division, conduct unbecoming a public employee, and misconduct. This provision, however, shall not be interpreted to prevent the separation of an employee because of lack of funds or curtailment of work.

812 F.2d at 399.

918, 921–23 (7th Cir.1986); *Lovelace v. Southeastern Massachusetts University,* 793 F.2d 419, 423–24 (1st Cir.1986); *Malcak v. Westchester Park District,* 754 F.2d 239, 244–45 (7th Cir.1985); *Hadley v. County of Du Page,* 715 F.2d 1238, 1242–43 (7th Cir.1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984); *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1099 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982); *cf. Cunningham v. Adams,* 808 F.2d 815, 820–21 (11th Cir.1987) (low bidder did not have property right in prospective contract award even though committee designated him as first place bidder; instructions to bidders stated that committee would make only a "recommendation"—not a selection—to Board; responsibility for making award rested solely with Board as stated in instructions); *Batterton v. Texas General Land Office,* 783 F.2d 1220 (5th Cir.), *petition for reh'g denied,* 789 F.2d 316, 317 (5th Cir.) (employer's practice was to discharge at-will employees for good cause only; but fact that employer chose to grant employees, as a matter of grace and practice, more than state law gave them did not confer property right upon them), *cert. denied,* —— U.S. ——, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986).

We therefore hold that as a matter of law Stow had no constitutionally protected right to continued employment in his position as a patrolman. The judgment of the District Court is reversed. Because our holding that Stow had no constitutionally protected property right is dispositive of the case, we need not address the merits of the other issues raised by defendants in 86–1741.[4] In addition, because Stow is no longer the "prevailing party," we reverse the award of attorney's fees in 86–1945.

REVERSED.

---

4. Though we need not address the merits of the remaining issues, we wish to emphasize an important point in regard to the issue of qualified immunity. The individual defendants raised the qualified immunity issue at trial. The District Court, however, without objection from defendants, submitted the issue to the jury. This was error. The issue of qualified immunity is a question of *law* to be determined by the District Court. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Warren v. City of Lincoln,* 816 F.2d 1254, 1261–62 (8th Cir.1987). Because it is an affirmative defense, it must be pleaded by an individual defendant. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). The District Court in most cases should rule on the issue of qualified immunity before trial. If a defendant's motion to dismiss or for summary judgment on the basis of qualified immunity is denied, an immediate appeal is permitted. *Mitchell v. Forsyth,* 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985).