Pamela D. BALL *v.* ARKANSAS DEPARTMENT of COMMUNITY PUNISHMENT

99-917                                          10 S.W.3d 873

Supreme Court of Arkansas
Opinion delivered February 24, 2000

*Law Office of Treeca J. Dyer, P.A.*, by: *Treeca J. Dyer*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brian G. Brooks*, Ass't Att'y Gen., for appellees.

TOM GLAZE, Justice. Pamela Ball brings this appeal from the trial court's dismissal of her complaint against the Arkansas Department of Community Punishment (hereinafter "DCP" or "Department") and its director, Paula Pumphrey, and employees, Dave Johnson and Donald Webb. The court of appeals certified this case to us, and we accept jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(a)(1) and 1-2(b)(4) and (5).

Ball, a parole officer with the DCP, was fired on September 5, 1997. Shortly before her termination, she had initiated a parole revocation hearing against a parolee represented by State Representative Michael Booker. Ball's attorney and her father were present at the hearing, held at the Area 12 parole office in Little Rock.[1] Field Services Administrator Dave Johnson became concerned about the situation, and attempted to have the meeting closed so that Ball's attorney and father could not attend; however, he was unsuccessful, and the hearing proceeded. During the hearing, Booker apparently made some hearsay allegations that Ball had made threatening

---

[1] Ball had alleged some kind of prior difficulties with Rep. Booker, and she had requested that her attorney and father be at the hearing to make sure that Booker would not attempt to "harass or intimidate" her.

remarks about him. After the hearing was over, some kind of confrontation arose between Booker and Ball's father. No one present in the hearing room heard what the two men said.

Johnson asked Donald Webb, the Area 12 Parole Supervisor, to have persons present at the hearing turn in written memoranda detailing what happened. Ball and two other DCP employees were asked for memos, but Ball refused. She demanded that Johnson put his request in writing, detailing the reasons he wanted the memo. Johnson refused to comply with this demand and had Webb instruct Ball to turn in the memo by 4:00 that afternoon or face discipline for insubordination.

Rather than turn in a memo as requested, Ball had her attorney draft a letter and fax it to Johnson. The letter stated that Ball had no knowledge of what happened between her father and Booker. In addition, Ball's attorney stated that she was protesting the "strong-arm tactics" being used against Ball, and advised Johnson to let the matter rest. Finally, the letter instructed Johnson to contact Ball's attorney if he had any further questions to ask of Ball.

Webb informed Ball that the letter was not sufficient and terminated her for insubordination, basing his decision not only on the fact that Ball had her attorney write the letter, but also that she had demanded Johnson's request in writing. Ball appealed her dismissal to the DCP's internal grievance panel, which upheld the firing. Claiming that decision was tainted because one panel member allegedly called her a "troublemaker," Ball appealed again, this time to the State Employee Grievance Appeal Panel, or SEGAP. SEGAP reversed the lower panel, saying that Ball had not failed to comply with her supervisor's request, but merely responded in an "unconventional way." SEGAP decided suspension, rather than termination, was the appropriate discipline.

The DCP appealed SEGAP's decision to Richard Weiss, Chief Fiscal Officer of the State of Arkansas. In an opinion signed by Tim Leathers, the SEGAP decision was reversed and Ball's termination reinstated. Leathers noted that "[a] state agency, particularly one connected to law enforcement, cannot be expected to channel its reasonable requests of employees through the employee's attorney. Public policy dictates that an agency has the authority to establish reasonable rules and orders."

Following that appeal, Ball filed a complaint against the DCP with the Pulaski County Circuit Court, alleging wrongful termination, based on "an implied contract of employment," and adding a claim of outrage. The DCP moved to dismiss pursuant to Ark. R. Civ. P. 12(b)(6), arguing that the state was immune from suit under Ark. Const. art. 5, § 20, that Ball was an at-will employee, and that there were insufficient facts to support an outrage claim. Subsequently, Ball filed an amended complaint naming Pumphrey, Johnson, and Webb individually and asserting that, as individuals, they were not immune. In her response to the motion to dismiss, she alleged that Ark. Code Ann. § 19-10-305(a) (Supp. 1999) waived the defendants' tort immunity because they acted with malice and outside the scope of their employment. She also argued that her equal protection rights were violated because she was terminated in violation of the Department's written policies. Finally, she contended that there was a factual question with respect to her outrage claim.

On December 1, 1998, the trial court entered an order dismissing the DCP on the grounds of sovereign immunity. Because the Department was immune, the court held it had no jurisdiction to entertain the suit. On May 4, 1999, the judge dismissed Pumphrey, Johnson, and Webb, finding that they were also immune from suit, and consequently his court lacked jurisdiction to hear the matter. In addition, the court noted that even if it could hear the matter, it would grant the motion to dismiss on the merits because Ball was an at-will employee, so her wrongful-discharge and breach-of-contract claims failed as a matter of law. Finally, the court stated that Ball failed to state a cause of action for outrage.[2] From this order, Ball brings her appeal.

■ As an initial matter, we point out that although the trial court stated that it was granting a motion to dismiss, it appears that matters outside of the pleadings were considered in reaching this conclusion. When matters outside the pleadings are presented and not excluded by the trial court in connection with a 12(b) motion, we treat the motion as one for summary judgment under Rule 56 of the Arkansas Rules of Civil Procedure. *See Martin v. Arthur*, 339 Ark. 149, 3 S.W.3d 684 (1999); *Clark v. Ridgeway*, 323 Ark. 378,

---

[2] Ball abandoned her outrage claim on appeal, so we need not address it.

914 S.W.2d 745 (1996). The issue then becomes whether or not there was any genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *National Bank of Commerce v. Dow Chem. Co.*, 338 Ark. 752, 1 S.W.3d 443 (1999).

Ball does not challenge the trial court's ruling as to the Department and its entitlement to sovereign immunity. Rather, she limits her argument to whether or not the Department's employees, Pumphrey, Johnson, and Webb, are immune under Ark. Const. art. 5, § 20, and Ark. Code Ann. § 19-10-305(a) (Supp. 1999). We hold that they are.

■ When a suit is filed against employees of the state, § 19-10-305 provides them with immunity from civil liability for nonmalicious acts occurring within the course of their employment. *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986). To determine whether a suit against state employees is in reality a suit against the State, we use the following standard, set out in *Page v. McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938):

> [W]here a suit is brought against an officer or agency with relation to some matter in which defendant represents the state in action and liability, and the state, while not a party to the record, is the real party against which relief is sought so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the state, will operate to control the action of the state or subject it to liability, the suit is in effect one against the state and cannot be maintained without its consent.

*Beaulieu*, 288 Ark. at 398 (quoting *Page, supra*).

■ Ball's action sought reinstatement to her position and restoration of her benefits, seniority, annual and sick leave, compensatory time, and longevity bonus pay. It is clear that she sought a judgment that would have operated to control the action of the state, so the trial court was obviously correct to dismiss the complaint against the DCP. The question then becomes one of immunity for Pumphrey, Webb, and Johnson. As employees of the state, they are immune unless they acted either maliciously or outside the scope of their employment.

■ However, it is actually unnecessary to explore that point, because Ball was an at-will employee. In Arkansas, the general rule is that an employer or an employee may terminate an employment

relationship at will. *See Crain Indus., Inc. v. Cass,* 305 Ark. 566, 810 S.W.2d 910 (1990); *Gladden v. Arkansas Children's Hospital,* 292 Ark. 130, 728 S.W.2d 501 (1987). There are two basic exceptions to the at-will doctrine: (1) where an employee relies upon a personnel manual that contains *an express agreement* against termination except for cause; and (2) where the employment agreement contains a provision that the employee will not be discharged except for cause, even if the agreement has an unspecified term. *Gladden,* 292 Ark. at 136.

■ Neither of these exceptions applies here, because Ball had no employment agreement or contract. She attempts to rely on one section of a DCP Administrative Regulation, entitled "Disciplinary Action," for her argument that she had an "implied" contract of employment. This section, however, provides only that an attempt should be made to apply formal disciplinary action in a progressive manner, but it further recognizes that certain situations can necessitate a deviation from the progressive discipline policy. Under Arkansas law, this is not enough to create a contract of employment, and to decide that it did "would be contrary to [this court's] directive in *Gladden,* that an implied provision against the right to discharge will not be sufficient to invoke the exception." *St. Edward Mercy Med. Ctr. v. Ellison,* 58 Ark. App. 100, 108, 946 S.W.2d 726, 729 (1997).

■ Because Ball was an at-will employee, she could have been fired for any reason, no reason, or even a morally wrong reason. *Smith v. American Greetings Corp.,* 304 Ark. 596, 804 S.W.2d 683 (1991); *Ellison,* 58 Ark. App. at 105. Thus, the question of malice on the part of her employer is irrelevant.

■ Ball also attempts to bring herself within one other narrow exception to the employment-at-will doctrine — the public policy exception. This exception was established in *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380 (1988). In that case, this court held that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state. The public policy of a state is found in its constitution and statutes, *Wal-Mart Stores, Inc. v. Baysinger,* 306 Ark. 239, 812 S.W.2d 463 (1991), but Ball fails to point us to any statutory or constitutional provisions that would support her argument. Although she attempts to argue in her brief that she

was fired as the result of the political influence of Rep. Booker and in retaliation for "blowing the whistle" on DCP's course of conduct in the way it handles parole hearings, this is the first time she raises these points. This court will not consider an argument for the first time on appeal. *Dobie v. Rogers*, 339 Ark. 242, 5 S.W.3d 30 (1999).

For the reasons stated above, we hold that there was no genuine issue of material fact presented to the trial court. Ball was an at-will employee, and the Department was free to terminate her employment. Thus, we affirm the trial court's decision, holding that the appellees are immune from suit, but we modify or clarify the dismissal to be one with prejudice.