The Honorable Sam E. Angel II State Representative P.O. Box 748 Lake Village, AR 71653-0748
Dear Representative Angel:
I am writing in response to your request for my opinion on the following questions:
 1. Could you please clarify the difference between what the State of Arkansas considers general employment policies and what it considers to be executive?
 2. For example, may the elected official create and administer their [sic] own employee disciplinary measures? What if these are contrary to the quorum court's established personnel policies?
 3. May an elected official's employee handbook specifically state that their [sic] employees are at-will employees, even if the quorum court's personnel policy states that employees may only be dismissed for cause?
 4. If so, will the employees have a vested right under the quorum court's policy if they were hired before the elected official's policies were promulgated?
 5. Is the elected official bound by a quorum court's personnel handbook?
 6. Is the elected official bound by his or her predecessor's personnel handbook?
RESPONSE
With respect to your first question, general employment policies issue from the quorum court, apply uniformly to all county employees and relate exclusively to "employee practices and policies of a general nature." Executive employment policies issue from an elected county officer and relate specifically to the administration of that officer's executive functions. With respect to your second question, I believe an elected official can create and administer his own employee discipline measures, subject, however, to the condition that these cannot contravene general, uniformly applicable measures adopted by the quorum court. With respect to your third question, I believe (a) that the quorum court lacks constitutional authority to dictate that an elected officer's staff can be dismissed only for cause and (b) that an elected officer is free to identify his staff as at-will employees. With respect to your fourth question, I believe the employees cannot have "a vested right under the quorum court's policy" because the quorum court lacks authority to dictate that they can be dismissed only for cause. With respect to your fifth question, I believe (a) that the elected official himself is bound by nothing contained in the quorum court's personnel handbook and (b) that his staff is bound only by general, universally applicable provisions of the handbook. Finally, although answering your sixth question might entail a factual inquiry I am unequipped and unauthorized to undertake, I believe the answer to your question is in all likelihood "no."
Question 1: Could you please clarify the difference between whatthe State of Arkansas considers general employment policies andwhat it considers to be executive?
General employment policies are those adopted by a quorum court to apply uniformly to all county employees. By contrast, executive employment policies are those adopted by an elected county officer to apply to the employees of that office in the course of administering the office's executive functions.
Subsection 1(a) of amendment LV to the Arkansas Constitution provides: "A county acting through its Quorum Court may exercise local legislative authority not denied by the Constitution or by the law." Section 4 of amendment LV further provides, interalia, that the quorum court may "adopt ordinances necessary for the government of the county."
Subsection 14-14-801 of the Arkansas Code provides in pertinent part:
 (a) As provided by Arkansas Constitution, Amendment 55, Section 1, Part (a), a county government, acting through its county quorum court, may exercise local legislative authority not expressly prohibited by the Arkansas Constitution or by law for the affairs of the county.
 (b) These powers include, but are not limited to, the power to:
* * *
 (6) Fix the number and compensation of deputies and county employees;
 (7) Fix the compensation of each county officer within a minimum and maximum to be determined by law.
* * *
 (13) Exercise other powers, not inconsistent with law, necessary for effective administration of authorized services and functions.
Subsection 14-14-805(2) of the Code, which limits the scope of a quorum court's legislative power, prohibits the following:
 Any legislative act that applies to or affects the provision of collective bargaining, retirement, workers' compensation, or unemployment compensation. However, subject to the limitations imposed by the Arkansas Constitution and state law regarding these subject areas, a quorum court may exercise any legislative authority with regard to employee policy and practices of a general nature, including, but not limited to, establishment of general vacation and sick leave policies, general office hour policies, general policies with reference to nepotism, or general policies to be applicable in the hiring of county employees. Legislation promulgated by a quorum court dealing with matters of employee policy and practices shall be applicable only to employees of the county and shall not apply to the elected county officers of the county. Legislation applying to employee policy practices shall be only of a general nature and shall be uniform in application to all employees of the county. The day-to-day administrative responsibility of each county office shall continue to rest within the discretion of the elected county officials.
This statute creates a distinction between, on the one hand, general and uniformly applicable policies of the sort listed for illustration and, on the other, specific policies adopted to promote the smooth operation of a particular elective office. Policies of the first sort are properly fashioned by the quorum court; policies of the second sort should be fashioned by the elected officer. Significantly, the statute exempts from the scope of general employment-policy legislation only elected county officers, not these officers' staffs.
The role of the county judge also bears directly on your question. Section 3 of amendment LV to the Arkansas Constitution provides that the county judge will "hire county employees, except those persons employed by other elected officials of the county." Section 14-14-1101 of the Code provides in pertinent part:
 (a) Arkansas Constitution, Amendment 55, Section 3, established the following executive powers to be administered by the county judge:
* * *
 (4) To administer ordinances enacted by the quorum court;
* * *
 (6) To hire county employees, except those persons employed by other elected officials of the county.
Subsection 14-14-1102(b)(5) of the Code further provides:
 (A) HIRING OF COUNTY EMPLOYEES, EXCEPT THOSE PERSONS EMPLOYED BY OTHER ELECTED OFFICIALS OF THE COUNTY. The county judge, as the chief executive officer of the county, shall be responsible for the employment of the necessary personnel or for the purchase of labor or services performed by individuals or firms employed by the county, or an agency thereof, for salaries, wages, or other forms of compensation.
 (B)(i) "County or subdivisions thereof," for the purposes of this section, means all departments except departments administratively assigned to other elected officials of the county, boards, and subordinate service districts created by county ordinance.
 (ii)(a) Jurisdiction for the hiring of employees of counties, administrative boards, or subordinate service districts may be delegated by ordinance to such board or service district, but where any county ordinance delegating authority to hire county employees interferes with the jurisdiction of the county judge, as provided in this section, it shall be implied that such delegation shall be performed only with the approval of the county judge.
 (b) The jurisdiction to purchase the labor of an individual for salary or wages employed by other elected officials of the county shall be vested in each respective elected official.
Finally, A.C.A. § 14-14-1104 provides in pertinent part:
 (a)(1) The county judge may promulgate reasonable and necessary administrative rules and regulations, after notice and hearing thereon, for the administration and conduct of the various laws and programs to be administered by the judge in his capacity as the chief executive officer of the county.
 (2) These administrative rules and regulations shall be consistent with the state laws relating to the administration of county affairs by the county judge and the appropriate ordinances enacted by the quorum court.
In my opinion, these constitutional and statutory provisions charge the quorum court with responsibility for shaping general policy on such uniformly applicable issues as leave and vacation time and normal working hours. This assignment of responsibility is consistent with the quorum court's role as the guardian of the public fisc. Nevertheless, as expressly stated in A.C.A. §14-14-805(2), any such policies will not apply to elected officials. Moreover, it is clear that while the county judge has the power to hire county employees, other elected officials have exclusive power over hiring decisions in their own offices. A.C.A. § 14-14-1102(b)(5)(B)(ii)(b); Ark. Op. Att'y Gen. No.97-049 (attached). Elected officers are further charged with "[t]he day-to-day administrative responsibility" of running their offices, A.C.A. § 14-14-805(2) — an obligation that in my estimation includes shaping employment policies necessary to insure the proper functioning of government.
Indeed, to assign to the quorum court such executive policymaking decisions might well run afoul of Ark. Const. art. IV, §§ 1 and 2
and A.C.A. § 14-14-501, which dictate that the various branches of government operate independently of each other. See Karr v.Townsend, 606 F. Supp. 1121, 1132 (W.D. Ark. 1985) (declaring in dictum that it would violate the constitution for a quorum court to adopt a personnel policy that purported to restrict an executive officer's right to hire and fire his staff); cf.Walker v. Washington County, 263 Ark. 317, 564 S.W.2d 513 (1978) (holding that a quorum court ordinance that established uniform office hours for all constitutional offices did not violate the separation-of-powers doctrine); Ark. Op. Att'y Gen. No. 88-334
(same). As I opined in Ark. Op. Att'y Gen. No. 97-310: "[T]he quorum court, as part of the legislative branch of government, cannot exercise an overruling influence over a county executive department official, or otherwise encroach upon or significantly interfere with executive powers."[1] See generally Chaffinv. Arkansas Game and Fish Commission, 296 Ark. 431,757 S.W.2d 950 (1988); Oates v. Rogers, 201 Ark. 335, 144 S.W.2d 437
(1940); Ark. Op. Att'y Gen. 91-050. In my opinion, then, the personnel rules and regulations fashioned by elected officers to expedite their functions comprise "executive," as opposed to "general," employment policies, and only the elected officers themselves can dictate such policies.
Question 2: For example, may the elected official create andadminister their [sic] own employee disciplinary measures? Whatif these are contrary to the quorum court's established personnelpolicies?
In my opinion, the answer to the first part of your question is "yes." Although one would hope these policies reasonably bear on the day-to-day functioning of the official's office, the only legal restraints on an executive officer's discretion in fashioning disciplinary measures are those discussed in detail in the attached Ark. Op. Att'y Gen. No. 97-049. See also Ark. Ops. Att'y Gen. No. 94-098 and 87-082. As previously noted, I believe the above described statutory scheme anticipates that the quorum court will dictate only such policies as apply generally to all county employees, as distinct from policies that bear uniquely on the functioning of a particular executive agency. I further agree with the district court in Karr that a quorum court cannot adopt even a uniformly applicable ordinance that would impinge on an elected officer's discretion in hiring and firing. See Ark. Op. Att'y Gen. No. 87-312 (opining that the sheriff, not the quorum court, has exclusive authority to select deputies).
I could not even address the second part of your question without being supplied with some specific disciplinary policies to compare, and even then I would be unauthorized to undertake the task of acting as a finder of fact. In theory, a quorum court might impermissibly enact disciplinary regulations that strike at the core of an elected officer's "day-to-day administrative responsibility," in which case the regulations would fail as violating the separation-of-powers doctrine and the directives of A.C.A. § 14-14-805(2). I can only opine generally that if a conflict exists between the personnel policies of a quorum court and an elected officer, the quorum court regulation will control if, and only if, it uniformly applies to "employee policy and practices of a general nature."[2] Id. Section14-14-805(2) is completely unambiguous in limiting the quorum court in this fashion. Moreover, as the Supreme Court acknowledged in Walker, "the quorum court has no legislative powers other than those expressly directed or permitted."263 Ark. at 319. So long, then, as personnel policies imposed by an elected officer do not contravene a permitted legislative enactment, those policies should control. However, "[w]hether there is an infringement upon the separation of powers . . . depends upon the facts of each case." Id. at 320.
Unfortunately, the Arkansas Supreme Court has rarely found occasion to address the scope of "employee policy and practices of a general nature." The federal courts addressing the issue have been somewhat inconsistent. In Wilson v. Robinson,668 F.2d 380 (8th Cir. 1981), the Eighth Circuit Court of Appeals concluded that Pulaski County Sheriff Tommy Robinson violated a county ordinance in firing various deputies without observing the grievance procedure dictated by the quorum court. The court analyzed the issue as follows:
 We decline to declare the ordinance, or the state statute pursuant to which it was enacted, violative of the state constitution. The ordinance is clearly authorized by state statute. The Arkansas legislature has empowered Quorum Courts (the legislative branch of county government) to regulate "employee policy and practices of a general nature, including but not limited to, * * * general policies to be applicable in the hiring of county employees." Ark.Stat.Ann. § 17-3805(b) (1980). Such ordinances are to be "uniform in application to all employees of the county," excepting only elected officials. Id. If there could be doubt whether this grant of authority reaches to termination procedures, state law further provides that Quorum Courts have legislative authority over "the affairs of the county" except where "expressly prohibited by the Constitution or by law." (Emphasis added.) Id., at § 17-3801. The defendant has not cited, nor have we discovered, any state constitutional or statutory provision which expressly prohibits local authority over termination procedures.
 Although the Arkansas Supreme Court has not passed upon the precise question here, it has upheld local employment ordinances on both occasions that such issues have been decided. See Henderson v. Russell, 267 Ark. 140, 589 S.W.2d 565 (1979) (anti-nepotism ordinance held constitutional); Walker v. County of Washington, 263 Ark. 317, 564 S.W.2d 513 (1978) (ordinance fixing office hours for elected official's duties held constitutional).
 The ordinance and the legislation authorizing it are presumed valid and the burden is upon the party asserting unconstitutionality to establish the invalidity. Where, as here, no state decisional or positive law exists which contradicts the presumption of validity, we uphold that presumption and decline to intrude upon the power of state courts to determine such questions of state constitutional law.
The district court's injunction only requires that the defendant sheriff comply with the ordinance's notice and grievance procedure in order to terminate the employees. Whether termination could properly be enjoined on other grounds has not been reached.
680 F.2d at 382-83. This case thus reflects the belief that the Arkansas Supreme Court would at the very least approve a quorum court's dictating to an elected officer the procedure to be followed in making employment decisions. The court in Wilson
left open the question of whether the quorum court might further dictate the employment decisions themselves.
No court has ever cited Wilson, and the Eighth Circuit Court has been considerably more concerned about separation-of-powers issues in more recent pronouncements. For instance, in Horton v.Taylor, 767 F.2d 471 (8th Cir. 1985), the court summarily rejected on constitutional grounds a contention by road-graders in a highly politicized county that they were insulated by quorum court resolution against being laid off by a new county judge. After noting that a resolution does not carry the force of an ordinance, the court offered the following analysis:
 Even if the resolution was intended to carry greater force than this, it has no power in the face of the Arkansas Constitution, amend. 55, § 3, which states that" the County Judge * * * shall * * * hire county employees." (Emphasis added). See Ark.Stat.Ann. § 17-3901(B)(5) (1980) (enabling statute); McCuen v. Jackson, 265 Ark. 819, 581 S.W.2d 326, 327 (1979) (county judge, as an executive officer of the county, is vested with responsibility with respect to hiring county employees). Thus, an Arkansas county judge has "the right, duty and obligation to hire and naturally the concomitant duty to fire his employees, including road department employees." Horton, at 231.
 The road-graders claim that under Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the quorum court resolution created an objective job expectancy. Perry, recognizing that "`property' interests subject to procedural due process protection are not limited by a few rigid, technical forms," held that "[e]xplicit contractual provisions may be supplemented by other agreements implied from `the promisor's words and conduct in the light of the surrounding circumstances.'" 408 U.S. at 601-02, 92 S.Ct. at 2699-2700 (quoting 3 A. Corbin, Corbin on Contracts § 562 (1960)). Here, however, the "promisor" — the quorum court — had no power to do what it sought to do. The effort of another political entity to modify powers specifically and exclusively granted the county judge by the Arkansas Constitution must be judged a nullity. Unconstitutional acts can create no legitimate expectancy. See Smith v. Sorensen, 748 F.2d 427, 432 (8th Cir. 1984) (no expectancy created by governmental agent exceeding bounds of authority), cert. denied, ___ U.S. ___, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985).
767 F.2d at 474.[3]
The passage just quoted is difficult to reconcile with the earlier passage from Wilson. The court in Horton not only declared outright that the quorum court could not make a county judge's hiring decisions, it further strongly suggested that the quorum court could likewise not dictate the procedure whereby the county judge made his decisions.[4] This principle was echoed by the district court in Karr, which strongly questioned what would be the effect if the provisions of a county personnel manual purported to create a constitutionally protected property interest in a sheriff's employee's job:
 In any event, even if they did, the court is not at all certain that they would grant to the employees of the Benton County Sheriff's Office a legally enforceable right. See the court's discussion on this point in Horton v. Taylor, 585 F.Supp. 224
(W.D.Ark. 1984). In addition, it should be pointed out that article IV, section 1, of the Arkansas Constitution provides that "[T]he powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another." Article IV, section 2, provides that "[N]o person or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted." As the court indicated in the Horton case, supra, it believes that it would be in violation of the Arkansas Constitution for the legislative body in Benton County to attempt to dictate to elected officials in another, independent branch of government who their employees should be. The Constitution separates the functions of the separate branches, and applicable Arkansas law, Ark.Stat.Ann. §§ 76-3601, et seq., and, in fact, the county personnel policy recognizes the separation of power. Section 3 provides that the county judge shall hire all county employees except those employed by other elected officials. . . .
606 F. Supp. at 1132.
In McCuen, the Supreme Court stressed that it is the county judge's position as an executive officer that dictates maintaining his independence from the quorum court in personnel matters:
 Under Section 3 of Amendment 55 to the Constitution the county judge is given power to "hire county employees, except those persons employed by other elected officials of the county." The enabling statute for Amendment 55 contains this pertinent language:
 (B) The General Assembly further determines that the executive powers of the County Judge as enumerated in Section 3 of Amendment 55 are to be performed by him in an executive capacity, and not by order of the county court.
 In the exercise of the executive powers of the County Judge as hereinabove enumerated, the County Judge shall follow the procedures established below:
* * *
 (5) Hire county employees except those persons employed by other elected officials of the county. The County Judge, as the chief executive officer of the county, shall be responsible for the employment of the necessary personnel or for the purchase of labor or services performed by individuals or firms employed by the county or an agency thereof, for salaries, wages, or other forms of compensation. [Ark. Stat. Ann. 17-3901 (Repl. 1977).]
 Thus the appellant, as an executive officer of the county, is vested with responsibility with respect to hiring county employees and with respect to salaries, wages, and other forms of compensation.
265 Ark. at 821. This passage acknowledges not only the county judge's independence from the quorum court in matters of personnel policy, but further the independence of elected executive officials from both each other and the quorum court in such matters.
The basic question, then, is what it means to say that while elected officials retain autonomy to set their own substantive employment policies in furtherance of their "day-to-day administrative responsibility," they must defer to the quorum court's establishment of general policy uniformly applicable to all county employees. Answering this question is not easy, and judicial or legislative clarification would be welcome. Wilson
appears to establish that a quorum court can, at the least, dictate that an elected official afford an employee slated for discharge a grievance hearing resulting in an advisory opinion.Horton appears to establish that a quorum court cannot dictate that an elected official afford an employee slated for discharge a grievance hearing resulting in a binding decision. It is not helpful that in both cases, the federal judges could only speculate how the Arkansas Supreme Court would rule on this issue. Under the circumstances, I can do little more than opine that I find Horton persuasive in its apparent recognition that an executive officer should have significant autonomy in determining whom he hires and how he will run his own office.[5]
Question 3: May an elected official's employee handbookspecifically state that their [sic] employees are at-willemployees, even if the quorum court's personnel policy statesthat employees may only be dismissed for cause?
Although the Arkansas Supreme Court has never directly addressed this question, I believe the answer to your question is probably "yes." The general rule regarding at-will employment has been most recently stated in Ball v. Arkansas Department of CommunityPunishment, 340 Ark. 424, 10 S.W.3d 873 (2000):
 In Arkansas, the general rule is that an employer or an employee may terminate an employment relationship at will. See Crain Indus., Inc. v. Cass, 305 Ark. 566, 810 S.W.2d 910 (1990); Gladden v. Arkansas Children's Hospital, 292 Ark. 130, 728 S.W.2d 501
(1987). There are two basic exceptions to the at-will doctrine: (1) where an employee relies upon a personnel manual that contains an express agreement against termination except for cause; and (2) where the employment agreement contains a provision that the employee will not be discharged except for cause, even if the agreement has an unspecified term. Gladden, 292 Ark. at 136.
In my opinion, the authorities recited in the preceding sections establish that, absent a contractual provision to the contrary, an elected officer has control over hiring and firing his staff, subject only to the condition that he cannot fire employees for exercising their rights of free political speech and association.[6] As reflected in amendment LV, § 3, this principle is of constitutional proportions. Accordingly, inHorton, the court affirmed a district court's holding that a quorum court was constitutionally barred from dictating to a county judge that his employees could be fired only for cause.767 F.2d at 473. I believe, this same conclusion applies to any other elected officer.
However, assuming a quorum court and an elected officer adopt conflicting policies regarding the bases for terminating an employee, a court will need to determine which policy in fact applies. If an employee is reasonably led to believe that the quorum court's policy applies to him, the court might conclude that it does. The disposition of this question will turn on a consideration of the facts, including whether the elected official made it clear that the employment was at-will and that any proclamations to the contrary by other county officials did not apply. In my opinion, the controlling factual issue will be whether the employee reasonably relied on some authorized representation that the employment would be terminable only for cause.
Question 4: If so, will the employees have a vested right underthe quorum court's policy if they were hired before the electedofficial's policies were promulgated?
Again, the Supreme Court has never addressed this issue, and I consequently cannot answer your question definitively. However, as previously stated, a quorum court lacks the constitutional authority to vest any right to employment in an elected officer's staff. As reflected in the above recited passage from Ball, an employee's right to guaranteed employment except for cause vests when he reasonably relies on an express promise to that effect contained in a personnel manual that applies to him. In my opinion, basic contract law dictates that if a particular elected official either promulgates or adopts by reference a policy that employees can be terminated only for cause, that official cannot renege on that policy with respect to anybody who relied on that representation in accepting employment. However, based on the authorities recited above, I believe a court would conclude that an elected officer's employees have "a vested right under the quorum court's policy" only if the officer, having sole control over his staff, affirmatively subscribes to the policy.
Question 5: Is the elected official bound by a quorum court's personnel handbook?
The elected official himself is bound by nothing in a quorum court's personnel handbook. A.C.A. § 14-14-805(2). For the reasons stated above, the elected official is bound with respect to his staff only to the extent that he adopts the handbook or that it contains general policies uniformly applicable to all county employees.
Question 6: Is the elected official bound by his or herpredecessor's personnel handbook?
As a general proposition, personnel manuals are one factor in determining the terms of employment and whether an employee has a property interest in continued employment. See, e.g., Nolin v.Douglas County, 903 F.2d 1546 (11th Cir. 1990) (failure to present evidence of personnel guidelines defeated claim of property interest in continued employment). Other factors are the provisions of state statutes, express and implied contracts, and the history of conduct reflecting how a particular matter has traditionally been handled. See, e.g., Bishop v. Wood,426 U.S. 341 (1976) (property interest in public employment may be created by ordinance or contract, as determined by state law); Schneiderv. Indian River Community College Foundation, Inc.,875 F.2d 1537 (11th Cir. 1989) (although statute or contract generally creates right to continued public employment, less formal evidence of explicit understanding may create property interest in continued employment); Finch v. City of Vernon,877 F.2d 1497 (11th Cir. 1989) (police chief had no property interest in continued employment in city that had traditionally treated police as at-will employees). However, such highly fact-intensive inquiries into whether a property interest exists in continued employment do not quite address your question, which I take to be whether a personnel handbook creates a property interest in the terms, as opposed to the fact, of continued employment.
In my opinion, if an incumbent elected officer significantly changed his own personnel policies, the factual question would be whether he was entitled to do so by statute, ordinance, custom or under the terms of his contracts with his staff. Answering this question would obviously entail a factual inquiry of the sort this office cannot undertake.
However, a different question arises when a successor officer undertakes to impose personnel policies that differ from those of his predecessor. Although the Supreme Court has likewise never addressed this question, I believe that in all likelihood such conduct would be permissible. The constitutional and statutory provisions discussed above afford an elected officer autonomy in administering the duties of his office. This autonomy extends to personnel matters except for the uniformly applicable general policies dictated by the quorum court. I believe the effect of these constitutional and statutory provisions is, for all practical purposes, to render the elected officer, as opposed to the county, the "employer." It follows that any contract between the officer and a staff member is for a limited term — namely, the term for which the officer has been elected. Any such contract would consequently appear to expire when the successor officer assumes office. Since the particular elected officer is the employer, I do not believe he can be bound by terms agreed to by a previous employer. To conclude otherwise would be to shackle a newly elected officer to policies and personnel determined by his predecessors.
Moreover, I suspect, but obviously cannot formally opine, that elected officers and public employees mutually understand that personnel handbooks are subject to periodic revision. Policy revisions would consequently represent a contractually negotiated, as well as a statutorily mandated, prerogative of public office. However, conclusively determining as much would involve reviewing the terms of the handbooks and all pertinent attendant circumstances.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosure
[1] In Ark. Op. Att'y Gen. No. 91-020, this office provided the following analysis of what might constitute an impermissible legislative encroachment on executive functions:
 Arkansas case law is sparse on the question of encroachment of executive powers. Other jurisdictions have adopted more specific tests. Many of these jurisdictions require that the interference be "significant," or that one department not be given "veto power" over another, or be accorded a "coercive influence," or interfere with staffing or resource allocation decisions, or interfere with "constitutional power."
 The Kansas Supreme Court in State ex rel. v. Bennett, 219 Kan. 285, 547 P.2d 786 (1976) held that a significant interference with the operations of another department must take place before there is a usurpation of power. The court considered several factors to determine whether an unconstitutional usurpation exists, including the essential nature of the power being exercised, whether the power is exclusively executive, the degree of control by the legislature, the nature of the objective sought to be attained, and the practical result of the exercise of the power. 219 Kan. at 290-291.
In Ark. O. Att'y Gen. No. 89-206, this office further analyzed the issue of encroachment as follows:
 Whether or not the Quorum Court has unlawfully interfered with executive powers in any given instance is . . . a question of fact, to be resolved by the judiciary based upon the particular circumstances in each case. See, e.g., Walker v. Washington Co., 263 Ark. 317, 564 S.W.2d 513 (1978). We therefore cannot conclusively state in this instance that the action of the Quorum Court in "transferring money around in [an elected official's] budget" violates executive prerogatives. It must be recognized that although the Quorum Court may not involve itself in the day-to-day administrative responsibilities of each elected county official (A.C.A. 14-14-805(2)), it does have the power to make reasonable regulations as to the performance of the duties of a constitutional officer. See 16 C.J.S. Constitutional Law 134 (1984).
[2] In Ark. Op. Att'y Gen. No. 87-082, this office opined that the Conway County Personnel Handbook governs employees hired by the county judge, and that "other elected officials" remained free under Amendment LV, § 3 to establish their own hiring procedures. The instant opinion elaborates on this point only by adding that general and uniformly applicable provisions set forth in a county personnel manual — i.e., ones that do not bear on the administrative exercise of an executive function — may apply to the staff of an elected officer.
[3] Horton was remanded with instructions that the trial court inquire whether any of the appellants were dismissed "because they exercised constitutionally protected rights of political expression and association." Id. The substance of that inquiry prompted Judge Wollman to offer the following deadpan summary on the second appeal:
 Not surprisingly, the didactic nature of the remanding opinion had a memory-enhancing effect on certain of the witnesses. Be that as it may, the record reveals that appellants portrayed themselves as faithful, dedicated, impartial roadgraders — good men and true, graders gleaming and at the ready — prepared to grade roads for one and all without fear or favor. Judge Taylor, on the other hand, painted a picture of appellants as a cabal of inept slackers who, when they were not drinking coffee and exchanging gossip at the local cross-roads stores, ran their machines to ruin, leaving a path of destruction in their wake.
Horton v. Taylor, 817 F.2d 476, 478 (8th Cir. 1987).
[4] In Perri v. Aytch, 742 F.2d 362, 364-65 (3d Cir. 1983), the Third Circuit Court of Appeals likewise ruled that the separation of powers prohibited the Pennsylvania legislature from imposing an "external dispute resolution system" upon the judiciary.
[5] In offering this tentative opinion, I fear I may be contradicting Ark. Op. Att'y Gen. 97-080, in which my predecessor opined, inter alia, that it was constitutional for a quorum court to serve as a grievance committee charged with making final employment decisions for county employees not hired by the county judge. (The ordinance at issue declared the quorum court's decisions merely advisory with respect to employees of the county judge.) To the extent the ordinance distinguished between county employees hired by the county judge and all other county employees, it would appear to run afoul of the directive set forth at A.C.A. § 14-14-805(2) dictating that any quorum court legislation dealing with employee policy and practices "shall be uniform in application to all employees of the county." As suggested in the text of this opinion, I see no principled constitutional distinction between the county judge and any other elected executive officer, and I believe both should exercise equal autonomy in personnel matters. The question of how much autonomy the constitution requires is one that invites further judicial clarification.
[6] In Karr, the district court made the following observations regarding a county employee's expectation of continuing employment:
 It is true that there was testimony at the trial which indicates that a county employee, after expiration of the probationary period, expects that he will have a job as long as he does it. That is true throughout government and industry, but that alone, in the court's view, does not grant to such employee a legally enforceable contractual right to his job. These are the only provisions of the personnel policy that even arguably might affect this issue, and the court concludes that they simply do not provide the employee with the type of property interest protected by the due process clause of the Constitution.
606 F. Supp. at 1132. This passage reflects that in any given case the contract, not unsupported expectations, will control an employee's right to continued employment.