**Opinion issued August 15, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00203-CR

———————————

**JOSE LEWIS MORRIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1268962**

---

### MEMORANDUM OPINION

Appellant Jose Lewis Morris was charged by indictment with using a deadly weapon, a knife, in the commission of an aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). A jury found Morris guilty as charged in the

indictment. Morris pleaded true to the enhancement allegation that he had previously been convicted of the felony offense of burglary of a habitation, and the jury assessed punishment at 22 years in prison.

Morris appeals, raising two issues. In his first issue, Morris argues that the court's comments to the jury during voir dire were equivalent to charging the jury on the law and were erroneous. In his second issue, he argues that this was fundamental error. Because Morris did not object to the court's comments during voir dire, his first appellate issue is waived. Because we conclude that the court's comments did not constitute fundamental error, we affirm.

## Background

Complainant H. Sanchez was walking to his apartment with his friend when a neighbor told him that she had seen a stranger enter his apartment. Sanchez noticed that his front window was broken and the door had been "kicked in." Sanchez saw Morris walking away carrying a bag, and he suspected that Morris had burglarized his home. Sanchez gave chase. When Morris refused to stop, Sanchez tried to grab the bag that Morris was carrying, but the strap broke and Sanchez fell to the ground. Morris pulled out a knife—one that Sanchez recognized as his own—and he threatened to cut Sanchez if he did not retreat. Sanchez called the police on a mobile phone, and he and a friend continued chasing Morris. Twice during the pursuit, Morris threatened Sanchez with a knife,

saying that he would "cut" Sanchez if he did not retreat. When the police arrested Morris, Sanchez identified as his property several items that were found in Morris's possession, including the knife.

Morris was charged with aggravated robbery, and counsel was appointed to represent him. On the day of trial Morris informed the court that he waived his right to counsel, and he asserted his right to represent himself at trial. After a hearing to determine Morris's competence and that his waiver was made knowingly, intelligently, and voluntarily, the court granted his request to represent himself and instructed his court-appointed attorney to remain present as "stand-by counsel."[1]

The trial court explained to the venire panel the voir dire process, that Morris was representing himself, that the State had the burden of proof beyond a reasonable doubt, and that Morris was presumed innocent. The court also discussed the elements of the crime for which Morris was charged. The court's comments were punctuated with questions to the venire panel to determine whether anyone would have difficulty following the law.

---

[1]     *See Faretta v. Cal.*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975); *Hathorn v. State*, 848 S.W.2d 101, 122–23 (Tex. Crim. App. 1992); *see also Hatten v. State*, 71 S.W.3d 332, 334 (Tex. Crim. App. 2002) (noting that *Faretta* rights are triggered when accused contests guilt); TEX. CODE CRIM. PROC. ANN. art. 1.05 (West 2005) (recognizing right of accused to be heard by himself, through counsel, or both); *Carroll v. State*, 176 S.W.3d 249, 256 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

Morris did not object at any time during the voir dire. Both the prosecutor and Morris had an opportunity to conduct voir dire, challenge jurors for cause, and exercise peremptory strikes.

On appeal, Morris contends that the trial court gave the venire panel instructions that were legally incorrect. For example, Morris argues that the court incorrectly defined "imminent" and "threat" and incompletely defined "theft." The court gave the venire panel hypothetical examples of a person holding or waving a knife nearby or from down the street and saying he would stab the other person immediately or later in time:

> So, when you get to the part about the knife, that means the defendant could threaten with the knife. As he is walking up to somebody, as he is approaching, he could threaten with a knife during the actual taking of the property; or he might take the property and turn and leave and then threaten with the knife. It has to be close enough to the victim that it's a threat. You know, if you're down the street a block waving a knife, that probably wouldn't constitute a threat. It has to be a threat of imminent bodily injury or death.
>
> . . . .
>
> In other words, if I come up and say, "Give me your watch," and I threaten you with a gun, for example, and you give me your watch, I look at the time, and I give it back to you, you know, that is not theft, right? Because I wasn't trying to obtain and maintain control of the property. I just wanted to know the time.
>
> . . . .
>
> In other words, if I'm walking up to you from a half a block away and I say, "I want your car," whatever it is, and I have my knife, and I say,

4

"If you don't give me that car, I'm going to stab you next week," is that a threat of imminent bodily injury? No.

. . . .

The court told the venire panel that neither "threaten" nor "imminent" would be defined for them:

And then—did intentionally and knowingly, and then it says "threaten." Threaten will not be defined for you. So, it will be your job to see if the action with the knife was a threat. . . . So, that's what the jury decides. . . . "Imminent" will not be defined for you; but for purposes of the discussion, I'm going to use the word "immediate."

The court also told the panel that "'[c]omplainant' is just the legal word for victim," and explained that "intentionally and knowingly" are

usually pretty easy for jurors because they pretty much go along with the layperson's definition of committing an act intentionally or knowingly. Basically, it means having a conscious objective or desire to engage in the conduct or cause the result. This wasn't something that happened accidentally, so to speak. The person did it intentionally or did it with knowledge of what he was doing.

In addition to explaining the elements of the crime for which Morris was indicted, the court also explained that the burden of proof was beyond a reasonable doubt, not beyond a shadow of a doubt, and that it was a very high burden. After asking Morris to stand so the jury could see him, the court addressed the presumption of innocence:

You know, there are all different ways to explain [the presumption of innocence]. But the way that has always worked best for me is just to picture him wearing a bubble, and that protects him. At such time as the State proves the case beyond a reasonable doubt, if they are able to

5

do that, that bubble bursts; and the State is entitled to their finding of guilt. But it's very important that at this time you see Mr. Morris as an innocent person. So, you don't have to see the bubble; but you do have to be able to see him as an innocent person and give him the presumption of innocence. Can everybody do that? Anybody who cannot?

The court explained that Morris was not required to testify and that the jury could not hold his failure to testify against him or consider it for any purpose. When the court asked, "Everybody okay with that?" one juror informed the court that it would be difficult to follow that instruction. The court explained that the jury would determine the credibility of the witnesses and that "all witnesses start out the same and you cannot stereotype them because of their occupation or their sex or their race or [any] one factor." Again the court asked the panel, "Everybody okay with that concept?"

The court explained that the indictment was not evidence of guilt and that it was obtained by a grand jury employing a far lower burden of proof, probable cause. The court asked if everyone could "follow the instruction that the indictment is no evidence of guilt." The court also inquired generally, "Anybody who wants to talk about anything, who has any issues with anything we have discussed so far?"

The court explained the statutory sentencing ranges that could apply depending on the evidence introduced at trial and the jury's verdict on guilt-or-innocence. The court informed the panel that the jury would have to consider the

6

full range of sentencing and that they could not consider the impact of possible parole to impose a harsher sentence. And the court informed the panel that they would be given written instructions prior to deliberations.

After the prosecutor and Morris had an opportunity to conduct voir dire, the trial court entertained challenges for cause, ruling that several potential jurors were disqualified. Both sides exercised peremptory strikes, and the jury was empaneled.

Morris testified at trial, confessing that he had been incarcerated five times and admitting a prior burglary conviction and prior drug-related convictions. He said that he did not intend to rob Sanchez, pointing to a photo of himself in sandals and saying that he would have worn better shoes. Morris testified that he had accompanied a friend to Sanchez's house, and that the friend possessed certain items of Sanchez's personal property because Sanchez had "pawned" them to him. According to Morris, his friend had gone to see Sanchez to determine if he was ready to redeem his property. Morris said that his role was limited to carrying the bag containing the property, and he denied entering Sanchez's home or ever having had a knife.

The jury found Morris guilty as charged in the indictment, and he appealed.

**Analysis**

## I.  Charge error during voir dire

In his first issue, Morris argues that the court's comments to the jury during voir dire were equivalent to charging the jury on the law and were erroneous.

Ordinarily, to preserve an error for appellate review, the complaining party must make a "timely request, objection, or motion."  TEX. R. APP. P. 33.1(a)(1); *see Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (holding that appellant waived complaint about trial court's explanation of reasonable-doubt standard during voir dire by failing to renew objection when trial court repeated explanation); *see also Moore v. State*, 907 S.W.2d 918, 923 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding that appellant waived complaint about trial court's comment during voir dire about weight of evidence); *Espinosa v. State*, 194 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("When appellant complains about an improper remark by the prosecutor during voir dire, appellant must object when the remark is made.").  Morris did not object to the trial court's comments to the venire panel.  Thus, he has waived his complaint on appeal, *see* TEX. R. APP. P. 33.1(a)(1), unless the alleged error of which he complains was a fundamental error affecting substantial rights, in which case no objection is necessary to preserve error.  TEX. R. EVID. 103(d).  Morris's first issue is overruled.

## II.    Fundamental error

In his second issue, Morris contends that the trial court's comments to the venire panel constituted fundamental constitutional error and deprived him of his right to an impartial judge and jury.  He argues that these alleged errors affected the framework of his trial and violated his due process rights under the federal and state constitutions.  He contends that because the judge incorrectly explained the law, the jury's consideration of the evidence was tainted, yielding an unfair trial.

Throughout his brief, Morris assumes that the court's comments to the venire panel had the same force and effect as the written jury charge.  He relies on *Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App. 2012), a recent opinion in which the Court of Criminal Appeals held that a trial court's inclusion in its written charge of a definition for "operate," a term for which there is no statutory definition, constituted an improper comment on the weight of the evidence.  357 S.W.3d at 651–52.  In so doing, the Court explained that even a "facially neutral and legally accurate" definition could constitute an improper comment on the weight of the evidence if it directs the jury's attention to a particular type of evidence on which the jury may base its verdict.  *Id.*  The Court held that the jury should have been free to assign to the undefined term "operate" any meaning acceptable in common parlance.  *Id.* at 652.  The definition given in *Kirsch* "impermissibly guided their understanding of the term." *Id.*

9

In this case, what Morris complains about is not a written jury charge. Thus, *Kirsch* is inapplicable. In addition, Morris's arguments based on *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984), fail because this is not a case of charge error. *See Rhoades v. State*, 934 S.W.2d 113, 121 (Tex. Crim. App. 1996) ("If there is no charge error, *Almanza* has no application.").

Rather, the alleged error identified by Morris concerns the court's comments to the venire panel. In *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality op.), the Court of Criminal Appeals held that an appellant need not always object to voir dire statements to preserve error. In that case, the trial court apologized to the venire panel for a long delay, told them that the delay was caused by the defendant's indecision about whether to take a plea bargain, and noted that it would have preferred the defendant to plead guilty. *Blue*, 41 S.W.3d at 130. Because these comments compromised the defendant's presumption of innocence, a plurality of the Court of Criminal Appeals held that no objection was necessary to preserve the issue for appellate review. *Id.* at 132–33.

Other constitutional rights may be waived, however, if the proper request, objection, or motion is not asserted in the trial court. *See Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (noting that almost every constitutional and statutory right may be waived by failing to object in trial court). But some legal rights cannot be forfeited. *See Saldano v. State*, 70

10

S.W.3d 873, 887–88 (Tex. Crim. App. 2002); *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds*, *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). For example, "absolute, systemic rights," like jurisdiction over the person or subject matter of the case, may be raised for the first time on appeal. *See Saldano*, 70 S.W.3d at 887–88; *Marin*, 851 S.W.2d at 279.

In *Jasper v. State*, 61 S.W.3d 413 (Tex. Crim. App. 2001), the defendant argued that the trial court's comments during testimony unfairly prejudiced him. 61 S.W.3d at 421. The Court of Criminal Appeals found no fundamental error because the judge's comments—correcting a misstatement or misrepresentation of previously admitted testimony, maintaining control and expediting the trial, and displaying annoyance toward the defense counsel—did not rise "to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Id.*

Likewise, in *McLean v. State*, 312 S.W.3d 912 (Tex. App.—Houston [1st Dist.] 2010, no pet.), an appeal from a conviction for prostitution, the trial court expressed an opinion during voir dire that prostitution is not a victimless crime. 312 S.W.3d at 914. The defendant argued on appeal that the trial court's comments conveyed the judge's opinion of the case. *Id.* This Court held that the error, if any, was not fundamental because the trial court's comments did not bear on the defendant's presumption of innocence or vitiate the impartiality of the jury,

11

especially in light of the trial court's granting of numerous motions in limine sought by the defendant and correctly instructing the jury in its charge. *Id.* at 917.

Finally, in *Marshall v. State*, 312 S.W.3d 741 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd), the defendant argued that the trial court's voir dire comments about reasonable doubt impermissibly lowered the State's burden of proof. 312 S.W.3d at 743. The trial court stated, "Basically I guess the Legislature figures everybody is reasonable and they would know a reasonable doubt when they see it." *Id.* at 742. This Court held that there was no fundamental error because the trial court's comments did not taint the presumption of innocence or vitiate the impartiality of the jury. *Id.* at 744.

Morris contends that the court erroneously defined the following terms: "imminent," "threaten," "theft," "complainant," "intentionally," "knowingly," and "deadly weapon." Morris argues that the court provided non-statutory definitions of "imminent" and "threaten" by using hypothetical examples to explain potential applications of those terms to a set of facts. However, the court did not define those terms for the jury. Rather, the court specifically stated that both "threaten" and "imminent" would not be defined for the jury and that it would be their job to determine if the alleged actions constituted a threat of imminent harm.

Morris complains that the court gave the venire panel an incomplete definition of theft by informing them that intent to maintain control was an element

of theft but without providing them the other elements. Morris's theory of the case was that he was a bystander, unfairly entangled in a dispute between Sanchez and a friend who had loaned him money and accepted Sanchez's personal property as collateral. The examples the court used during voir dire demonstrated that a jury would have to find a defendant not guilty if they believed that the defendant did not intend to maintain control of the property.

Morris argues that the court's comment that "'complainant' is just the legal word for victim" improperly conveyed to the jury the court's opinion that a crime had been committed. Similarly, he argues that the court's statements that the jury would have to decide if the knife was a deadly weapon conveyed the court's opinion that Morris had used or exhibited a knife. Morris contends that these were comments on the weight of the evidence. From the record, it is clear that these comments were made in the context of reading the indictment to the venire panel. The court explained that the indictment is no evidence of guilt. In fact, the court explained the differing burdens of proof applied by the grand jury and the trial jury:

> And although I have read the indictment to you, it is not any evidence of guilt. It is just a charging instrument. It just tells the State what they have to prove and lets the defendant know what he is charged with. . . . .
>
> So, you can imagine with that many cases, all the Grand Jury has time to do generally is just hear a summary from the D.A. Once in a while, there will be a high profile case or a very complex case

13

where a—where witnesses will be brought in to testify, but that's unusual. Most of them just are based on a brief summary of the evidence from the D.A. The defendant is not there. His lawyer is not there. So, there is nobody to argue to the contrary. So, all an indictment means is that the Grand Jury has found there is enough evidence for a real jury to look at the case. We're talking about the four standards. They use probable cause, the lowest standard. And, of course, the jury here uses the highest standard of beyond a reasonable doubt. Can everyone follow the instruction that the indictment is no evidence of guilt?

Morris complains about the court's statements pertaining to the terms "intentionally" and "knowingly." Although he concedes that these terms were properly defined in the court's charge, he argues that the written charge was not curative because the inconsistencies were confusing and the court did not instruct the jury that they were to follow only the law in the written charge. The record belies Morris's contentions. First, in its comments, the court specifically told the venire panel that the indictment said "intentionally and knowingly." Then the court said, "And we will give you definitions for the word 'intentionally' and for the word 'knowingly.'" This conveyed to the jury that a definition would be given to them at a later time. Moreover, the written jury charge stated that the jury members were the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony, but "the law you shall receive in these written instructions and you must be governed thereby."

We hold that the court's comments do not rise "to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury," so as to

14

constitute fundamental error to be reviewed without an objection. *See Jasper*, 61

S.W.3d at 421. We thus overrule Morris's second issue.

**Conclusion**

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).